## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES C. SPIELMAN AKA CHRIS SPIELMAN, INDIVIDUALLY (AND/OR AS AN OFFICER, SHAREHOLDER AND/OR AFFILIATE OF PROFECTUS GROUP, INC., D/B/A THE COLLEGE FOOTBALL PLAYERS CLUB) ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED | : : : : : : : : : | JUDGE: |
| | | CASE NO.: |
| PLAINTIFFS, | : : : | **CLASS ACTION COMPLAINT** |
| -VS- | : : : | |
| IMG COLLEGE, LLC, [IMG WORLDWIDE, INC., WME ENTERTAINMENT ("WME"), DBA IMG, DBA INTERNATIONAL MANAGEMENT GROUP DBA OHIO STATE IMG SPORTS MARKETING] (COLLECTIVELY REFERRED TO AS "IMG"); AND THE OHIO STATE UNIVERSITY (AKA "OSU"), JOHN DOES 1-10, ABC COMPANY'S 1-10. | : : : : : : : : : : : | **JURY DEMAND ENDORSED HEREIN** |
| DEFENDANTS. | : : | |

## INTRODUCTION

1. Plaintiff and putative Class Representative Charles C. Spielman aka Chris Spielman ("Chris Spielman") brings this action both individually and on behalf of damages and injunctive relief classes (collectively, the "Classes") consisting of former and current student-athletes who competed for Defendant The Ohio State University's ("OSU") football program (hereinafter, "Football Program" sometimes referred to hereinafter as "student-athletes"). The Classes who participated in the Football Program have had their images licensed or sold or distributed by Defendants, their Co-Conspirators, or their licensees preceding the filing of this Complaint (the "Class Period"), and will continue in

the future. Plaintiff also brings this action on behalf of current student-athletes competing in the Football Program, as well as former and current student-athletes of the Football Program, for purposes of the injunctive relief class only, as both groups' future compensation rights are impacted by the anticompetitive practices described herein.

2. Defendants OSU and IMG/WME and their Co-Conspirators, including Nike USA Inc. and Nike, Inc. ("NIKE") and American Honda Motor Co. Inc. ("HONDA") have committed *per se* violations of the federal antitrust laws by engaging in a price-fixing conspiracy and a group boycott / refusal to deal that has unlawfully foreclosed class members from receiving compensation in connection with the commercial exploitation of their images following their cessation of intercollegiate athletic competition. Plaintiff also sets forth claims for (1) Unreasonable Restraint of Trade in Violation of Section 1 of the Sherman Act 15 U.S.C. §1, (2) Unreasonable Restraint of Trade – Group Boycott / Refusal to Deal in Violation of Section 1 of the Sherman Act 15 U.S.C. §1, (3) Violations of 15 U.S.C. §1125, et seq., (4) Violations of R.C. 4165, et seq., (5) Violations of R.C. 2741, et seq., (6) Accounting, (7) Unjust Enrichment, and (8) Declaratory Relief. Plaintiff further requests that the Court establish a constructive trust for the benefit of the Class Members and for the purpose of holding in trust the licensing revenues that Defendants and their Co-Conspirators have unlawfully diverted from Class Members.

3. As utilized herein, the term "former student athletes" includes only those individuals that have permanently ceased competing on the Football Program at OSU because of, for example, graduation; exhaustion of eligibility; injury; voluntary decisions to cease competition; and involuntary separations from teams due to decisions by coaches, schools, conferences, and/or the NCAA, and also includes those individuals that subsequently

became professional athletes, whether prior to or after the exhaustion of their intercollegiate eligibility, and further includes current students that have remained in school but ceased competing on the OSU Football Program. The term "Damages Class" refers to former student-athletes as described herein. The term "Declaratory and Injunctive Relief Class" includes both former and current student-athletes with respect to the OSU Football Program as described herein. The terms "Class," "Classes" and "Class Members" include both Damages and Declaratory and Injunctive Relief class members, unless otherwise specified.

4. As described below Defendants OSU, IMG/WME, and/or their Co-Conspirators have unreasonably and illegally restrained trade in order to commercially exploit former OSU student-athletes previously subject to its control, with such exploitation affecting those individuals well into their post-collegiate competition lives. The conduct of Defendants OSU, IMG/WME, and its/their Co-Conspirators is blatantly anticompetitive and exclusionary, as it wipes out in total the future ownership interests of former student-athletes in their own images - rights that all other members of society enjoy - even long after student-athletes have ceased attending The Ohio State University and/or participating on the Football Program.

5. OSU, by and through its business partners, including, but not limited to Defendant IMG/WME and its Co-Conspirators, NIKE and HONDA, and in conjunction with its for-profit business partners, have attempted to eliminate the rights of former student-athletes to receive even a single dollar from the substantial revenue streams described herein (See Agreements by and between OSU and NIKE, collectively attached hereto as Exhibit A for an example of said behaviors). Former OSU student-athletes, as defined under the Class

herein, do not share in these revenues even though they have never given informed consent to the widespread and continued commercial exploitation of their images. While OSU and its for-profit business partners reap millions of dollars from revenue streams including television contracts, rebroadcasts of "classic" games, DVD game and highlight film sales and rentals, "stock footage" sales to corporate advertisers and others, photograph sales, and jersey and other apparel sales, former student-athletes in the Class whose likenesses are utilized to generate those profit-centers receive no compensation whatsoever. (See Exhibit A). Despite the holdings in the *O'Bannon v. NCAA*, 802 F.3d 1049 (N.D. Cal. 2015), and without the consent of the Class Members and/or Plaintiff, OSU has entered into various licensing partnerships that unlawfully utilize the images of Plaintiff and Class Members, by and through Defendant IMG College, and as further detailed herein. The related available content featuring likeness of former student-athletes in the Class, such as DVDs, photos, and banners, and merchandise, continues to grow in both availability and popularity, and the growth will continue to explode as merchandise continues to be made available in new delivery formats as developing technology and ingenuity permits, as exemplified by the substantial library of "on demand" internet content now available for sale for OSU games as well as jerseys on OSU's website.

6. Plaintiff and Class Members have not transferred or conveyed their rights in the licensing or use of their image or likeness following the cessation of their participation on the OSU Football Program. OSU and its affiliates, including, but not limited to Defendant IMG/WME and Co-Conspirators have no right to license or use players' images, name, and likeness upon the conclusion of their participation in intercollegiate athletics, nor do they have the ability to restrict Plaintiff or Class Members usage and/or utilization of the

same. Defendants, as well as the Co-Conspirators defined herein; however, have agreed to act as if they were granted perpetual licenses with no limits, and further agreed to license and use the wrongfully obtained rights. (See Exhibit A).

7. In addition to agreeing to wrongfully interpret the use of Plaintiff and Class Members images while they were attending OSU as perpetual licenses, OSU has organized maintained and operated an unjust, perpetual system consisting of its dealings with the other named Defendants and Co-Conspirators, which perpetual system of unjust usage and restriction has been further facilitated by Defendant IMG and/or WME. The wrongdoers in the aforementioned perpetual system of unjust and monopolistic behaviors have collectively and illegally conspired to limit and depress the compensation of Plaintiff and Class Members for continued use of their images to zero, and have restricted their ability to capitalize on the blood, sweat, and tears that Plaintiff and the Class Members shed throughout their respective tenure at The Ohio State University. Defendants' and their Co-Conspirators' actions further constitute a group boycott/ refusal to deal as their concerted actions have effectively caused Plaintiff and Class Members to relinquish all rights in perpetuity for use of their images. This concerted action is in effect a refusal to deal with Plaintiff and Class Members on future post-competition rights issues.

8. OSU's abridgement of Plaintiff and Class Members economic rights in perpetuity is unconnected to any continuing pro-educational benefits for Plaintiff and/or Class Members. Defendants and Co-Conspirators' patently anti-competitive and illegal scheme has unreasonably restrained trade and is a *per se* violation of Section 1 of the Sherman Act. (See Exhibit A).

9. In addition to violating the federal antitrust laws, Defendants have been unjustly enriched. Defendants' actions have deprived Plaintiff and Class Members of their ability to exploit their right of publicity which protects the misappropriation of a person's identity for commercial use by another, and such use can consist of the person's name, visual likeness, or "other indicia of identity" such as voice, photograph, signature, or physical mannerisms. (See Exhibit A).

10. Reasonable and less restrictive alternatives are available other than OSU's "zero compensation" policy for Plaintiff and Class Members licensing rights. For example, all of the major professional sports, including basketball and football, have identified and utilized group-licensing methods to share revenues among teams and players. Additionally, other reasonable and less restrictive alternatives could include the establishment of funds for health insurance, additional educational or vocational training, and/or pension plans to benefit former student athletes.

11. On behalf of the Damages Class described herein, Plaintiff seeks relief herein including monetary damages, to be automatically trebled under the federal antitrust laws; disgorgement and restitution of all monies by which the Defendants have been unjustly enriched; and declaratory relief thereby establishing that that the language set forth in those OSU's agreements with those certain entities, including, but not limited to, those certain agreements with co-conspirator Nike, specifically Nike's licensing agreement with Defendant OSU referring to the "Legends of the Scarlet and Gray" vintage jersey licensing program and any similar contracts and/or agreements regarding future compensation rights and/or which any agreements which seek to impose restrictions on Plaintiff and the Class Members be declared as void and unenforceable. (See Exhibit A). Plaintiff and the Class

Members further seek an account of the monies received by Defendants, their Co-Conspirators, and their licensees in connection with the exploitation of Damages Class Members' images, and the establishment of a constructive trust to benefit Damages Class Members.

12. Plaintiff, on behalf of both former and current competitors in OSU'S Football Program, additionally requests injunctive relief permanently enjoining OSU and Defendants from entering into any other contracts and/or agreements regarding future compensation rights and/or restrictions with respect to Plaintiff and the Class Members.

## STATEMENT OF JURISDICTION

13. This Court has jurisdiction over the claims under 28 U.S.C. § 1331 because the action arises under the laws of the Unites States and involves federal questions, including but not limited to, 15 U.S.C. § 1125, *et seq*. The Court also has pendent jurisdiction of state law claims pursuant to 28 U.S.C. § 1367.

14. Jurisdiction is proper as the Causes of Actions are brought pursuant to the laws of the United States and/or utilize the same core of operative facts and is, therefore, subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15. Venue lies in the Southern District of Ohio because the facts leading to the dispute between the parties occurred in Franklin County, Ohio, within this District, and the Defendants and co-conspirators are doing business in this District.

## INTRADISTRICT ASSIGNMENT

16. This action arises in Franklin County because that is where a substantial part of the events that give rise to the claim occurred. OSU's main campus resides within this County. OSU fields many intercollegiate sports teams, including OSU's Football Program, all of which

participate in the Big 10 Conference. Plaintiff and Class Members have been and will be, subject to the continuing violations described herein, as are current putative Class Members on those teams for purposes of the Declaratory and Injunctive Relief Class. For the foregoing reasons, this action should be assigned to the Southern District of Ohio.

**PLAINTIFF**

17. Plaintiff Charles "Chris" Spielman is an individual who resides in Franklin County, Ohio. Mr. Spielman competed at the Ohio State University on its football team from 1984 through 1987. Mr. Spielman led the Buckeyes in total tackles in 1986 and 1987 and he is OSU's all-time leader in solo tackles.[1] He also holds the OSU record for most total tackles in a game.[2] Mr. Spielman is a three-time All-Big Ten choice and a two-time All-American and concluded his career at OSU by winning the Lombardi Award.[3] Mr. Spielman is third on the all-time OSU list in total tackles behind Marcus Marek and Tom Cousineau.[4] After leaving OSU Mr. Spielman became recognized as one of the National Football League's top players after finishing his 12-year career in 1999 with the Cleveland Browns.[5] In this case, Mr. Spielman has been deprived of compensation by Defendants and its Co-Conspirators for the continued use of his image following the end of his playing career at OSU, and has be subjected to unnecessary, unjust, and unconstitutional restrictions with respect to the usage of his own name, image and/or likeness. Upon information and belief, OSU, by and through the efforts of IMG/WME and Co-Conspirators NIKE and HONDA, organized and participated in a for-profit program whereby sixty-four (64) former student-

---

[1] http://www.ohiostatebuckeyes.com/sports/m-footbl/spec-rel/062707aaa.html
[2] *Id*.
[3] *Id*.
[4] *Id*.
[5] *Id*.

athletes and/or coaches were depicted upon banners that were hung in the OSU football stadium "The Horseshoe" (the "Honda Banner Program"). (See depictions of those Honda Banners attached hereto as Exhibit B). Plaintiff was one of the sixty-four (64) individuals depicted on said banners, despite the fact that Plaintiff did not provide consent, and Plaintiff was not compensated for said Honda Banner Program. Further, Plaintiff, among others in this Class, is a shareholder and/or officer in non-party Profectus Group, Inc. d/b/a The College Football Players Club. Upon information and belief, Plaintiff and Class Members have been and will continue to be subjected to damages for the unauthorized use of their names, images and likeness, as OSU, by and through the efforts of Defendant IMG/WME and Co-Conspirators HONDA and NIKE have continued to engage in for-profit business ventures while utilizing the name, images and/or likeness of Plaintiff and the Class Members without providing just compensation, without obtaining their consent, and while engaging in contractual dealings with Defendant IMG/WME and/or Co-Conspirators HONDA and NIKE in an attempt to impose restrictions upon Plaintiff and the Class Members. See Exhibits A and B; See also depictions of banners and marketing materials related to Co-Conspirators attached collectively hereto as Exhibit C).

## DEFENDANTS

18. Defendant IMG College, LLC [dba and/or otherwise known as and/or affiliated with WME Entertainment, also known as IMG Worldwide, Inc., dba IMG dba International Management Group dba Ohio State IMG Sports Marketing (collectively, "IMG" or "IMG/WME")] is a for-profit entity and is registered as a Foreign limited liability company in the State of Ohio.

19. Defendant, the Ohio State University (the "OSU") is  an  is  a  political subdivision/instrumentality of the State of Ohio with its principal place of business located in Columbus, Ohio. (OSU, Unnamed Defendants and IMG/WME are collectively referred to as "Defendants")

20. Whenever a reference is made in this Complaint to any act, deed, or transaction of the Defendants and/or Unnamed Defendants, the allegation means that the Defendants engaged in the act, deed, or transaction by or through their officers, directors, agents, employees, licensees, or representatives while they were  actively engaged in the management, direction, control or transaction of Defendants' for-profit business affairs.

## CO-CONSPIRATORS

21. NIKE USA, Inc. and NIKE, Inc. ("NIKE") is a non-defendant co-conspirator and are for-profit entities incorporated under the laws of the State of Oregon. NIKE has participated in and derived a benefit from the above-referenced business relationships and/or contractual agreements and is engaged in business in this Jurisdiction by its dealings with Defendants OSU and/or IMG/WME. (See Exhibits A and C).

22. American Honda Motor Co. Inc. ("HONDA") is a non-defendant co-conspirator is a for-profit entity incorporated under the laws of the State of California with its principal place of business located at 700 Van Ness Ave, Torrance, California 90501. HONDA has participated in and derived a benefit from the above-referenced Honda Banner Program and is engaged in business in this Jurisdiction by its dealings with OSU and/or IMG/WME. (See Exhibit B).

23. John Does 1-10 and ABC Company's 1-10 and various other persons, firms, corporations, and entities have participated as unnamed co-conspirators with

Defendants in the violations and conspiracy alleged herein, including that certain third party/parties that OSU has "assigned its rights" with respect to licensing of jerseys and additional apparel as set forth in the License Agreement with NIKE and as referenced and or reaffirmed by those certain amendments/addenda thereto. (See Exhibit A - C).  In order to engage in the offenses, charges, restrictions, and violations alleged herein, these Co-Conspirators in concert with Defendants have performed acts and made statements in furtherance of the antitrust violations and other violations alleged herein.  The names and contact information of John Does 1-10 and ABC Company's 1-10 could not be identified at the time of the filing of this action.

24. At all relevant times, and upon information and belief, each Co-Conspirator was an agent, affiliate, and/or contractual party with respect to Defendants OSU and/or IMG/WME and/or the remaining Co-Conspirators, and in doing the acts alleged herein, was/were acting within the course and scope of such agency/business relationship by and through the various programs and contractual dealings, including those set forth herein.  Defendants and each Co-Conspirator ratified and/or authorized the wrongful acts of Defendants and each of the other Co-Conspirators. (See Ex.'s A – C). Defendants and the Co-Conspirators are participants as aiders and abettors in the improper acts and transactions that are the subject of this action. (See Ex.'s A – C).

## GENERAL ALLEGATIONS

25. Defendant, the Ohio State University ("OSU") is one of the largest universities in the nation, with student population over 60,000 students at its Columbus campus.[6]

26. Additionally, OSU has an estimated alumni base comprised of nearly half a million-people living around the world.[7]

27. In addition to its academic curriculum, OSU offers various Football Program, including football, men and women basketball, men and women soccer, and track and field.

28. OSU is widely recognized for its football program.

29. Each year the football program hosts home games (as often as seven times a year) at Ohio Stadium, which is also known by its nicknames the "Horseshoe" or the "Shoe."

30. A large number of people (fans) attend these home games.

31. Indeed, Ohio Stadium boasts a seating capacity of 104,944 people and is the fourth largest on-campus facility in the nation.[8]

32. "From 1951 to 1973, the Buckeyes led the nation in attendance 21 times, including the 14 consecutive years from 1958 to 1971. Since 1949, Ohio State has never been lower than fourth nationally in average home attendance."[9]

33. Ohio Stadium had an average attendance in 2014 of 106,296 fans per game.[10]

34. OSU also regularly hosts other events at Ohio Stadium including, tours, events, and recruiting.

---

[6] https://www.osu.edu/osutoday/stuinfo.php
[7] https://www.osu.edu/alumni/about-us/
[8] http://www.ohiostatebuckeyes.com/facilities/ohio-stadium.html
[9] *Id*.
[10]      http://www.azcentral.com/story/sports/ncaaf/2015/05/14/ohio-state-had-highest-2014-average-football-attendance/27336369/

35. At each of these home games and various events, the fans are accosted by various advertisements.

36. These advertisements included banners that hung around Ohio Stadium as fans attempted to locate their seats or obtain refreshments, namely, the Honda Banner Program. (See Exhibit B.)

37. These banners contained depictions of notable OSU football players with their last names placed vertically next to a photograph of the player and a black bar at the bottom of the banner with the letters HONDA in white text. (See Exhibit B.)

38. The depictions throughout OSU's athletic facilities include Plaintiff Chris Spielman as well as other putative Class Members. (See Exhibits B & C).

39. In addition to the "Shoe," OSU also boasts the largest arena in the Big Ten, the Value City Arena.[11]

40. The Value City Arena is a 770,000-square foot multipurpose venue which seats 17,500 people for ice hockey, 19,500 people for basketball and up to 20,000+ for concerts.[12]

41. Value City Arena averages over 1 million guests per year.[13]

42. The OSU men's basketball hosted 257,957 fans over the course of 21 home games in 2016.[14]

---

[11] http://www.ohiostatebuckeyes.com/facilities/schottenstein-center.html

[12] Id.

[13] Id.

[14] http://i.turner.ncaa.com/sites/default/files/images/2016/06/09/2016_release_mens_basketball_attendance_final.pdf

43. The OSU women's basketball team boasted the fourteenth highest average attendance in the NCAA with 89,066 fans attending 17 home games during the course of the 2016 season.[15]

44. Plaintiff Chris Spielman and other Putative Class Members did not provide Defendants or its/their Co-Conspirators with, among other things, their permission to engage in for-profit licensing/marketing programs with Defendants and/or Co-Conspirators and/or other unnamed parties, nor did they consent, to the use of their personas by any of the Defendants and/or Co-Conspirators. (See Exhibits A – C; see also, Exhibit D, which is an agreement between Defendant OSU and putative Class Member James Stillwagon for the use of his name, image, and/or likeness in connection with a "Coke Machine" that was to be placed in Ohio Stadium in 2000).

### COUNT ONE – VIOLATION OF SECTION 1 OF THE SHERMAN ACT -15 U.S.C. § 1 UNREASONABLE RESTRAINT OF TRADE

45. Plaintiffs incorporate all the preceding paragraphs by reference as if fully rewritten herein.

46. Defendants and their Co-Conspirators, specifically, OSU, by and through Defendants' and Co-Conspirators' officers, directors, employees, agents, or other representatives, have entered into a continuing contract, combination, and conspiracy in restraint of trade to artificially depress, fix, maintain, and/or stabilize the prices paid (specifically, depressing, fixing, maintaining and stabilizing them at zero dollars) to Plaintiff Class Members for the use of, and to limit supply for, licensing, restrictions, and sale of their images in the United States and its territories and possessions, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). (See Ex.'s A – D).

---

[15] http://fs.ncaa.org/Docs/stats/w_basketball_RB/reports/Attend/2016.pdf

47. If Plaintiff and Class Members were free to license and sell the rights to their names, images, and likeness many more licenses would be sold. This output restriction also has the effect of raising the prices charged by the OSU and IMG/WME for licensing rights. (See Ex.'s A – C).

48. Defendants' unlawful conduct resulted in Plaintiff and Class Members losing their freedom to compete in the open market. This unreasonable restraint on competition has artificially limited supply and depressed prices paid by Defendants and their Co-Conspirators to Plaintiff and the Class Members for use of their images after cessation of participation in the aforementioned Football Program. (See Ex.'s A – D).

49. Plaintiff and the Class Members received less than they otherwise would have received for the use of their images in a competitive marketplace, and were thus damaged, and seek to recover for those damages. (See Ex.'s A – D).

50. Defendants and Co-Conspirators total abridgment of compensation rights to Plaintiff and the Class Members comprised of former OSU student-athletes in that defined Football Program is a *per se* restraint of trade and are not connected to any legitimate non-commercial goal. The purpose of the actions undertaken by Defendants OSU, IMG/WME, and Co-Conspirators is/are solely to enhance revenue for themselves and their for-profit business partners, by cutting costs, i.e., eliminating the need to pay any compensation to Plaintiff and Class Members for the continuing commercial exploitation of their names, images, and likenesses. OSU's actions have no relationship to any alleged goal of advancing educational or institutional objectives, as former student-athletes (namely Plaintiff and the Class Members), by definition are no longer members of OSU Football Program under the control of OSU.

51. IMG/WME has facilitated this illegal scheme and has financially benefited from the same.

52. As a direct and proximate result of Defendants' utter disregard for the Plaintiff and the Class Members, Plaintiff and the Class Members have been injured and financially damaged in amounts which are presently undetermined. Plaintiffs and Class Members' injuries consist of receiving lower prices for use of their images than they would have received absent Defendants' conduct and they have been unjustly and unlawfully restrained from participating in the open market. Plaintiff's and Class Members' injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful. (See Ex.'s A – D).

53. Plaintiff alternatively pleads that Defendants have violated Section 1 of the Sherman Act and that Defendants' actions violate the "rule of reason" antitrust analysis.

54. Defendants' and their Co-Conspirators' have collectively conspired to illegally limit and depress the compensation of Plaintiff and the Class Members for continued use of their images to zero. This patently anticompetitive and illegal scheme has unreasonably restrained trade. (See Ex.'s A – D).

55. Defendants' scheme fails the "rule of reason" antitrust analysis, as its anticompetitive effects substantially outweigh any alleged procompetitive effects that may be offered by Defendants, including that their collusive conduct is shielded by its concept of "amateurism." Reasonable and less restrictive alternatives are available to Defendants' current anticompetitive practices. (See Ex.'s A – D).

56. As a direct and proximate result of the wrongful conduct of the Defendants and Co-Conspirators, Plaintiff and Class Members have been damaged and are entitled to a declaratory judgment declaring as void and unenforceable all contractual agreements

and/or relevant sections thereof that purport to grant, transfer, restrict or convey the rights of Plaintiff and the Class Members in the use of their names, images, and/or likeness by and among Defendants and/or Co-Conspirators. Plaintiff and the Class are entitled to a permanent injunction that terminates the ongoing violations alleged in this Complaint.

57. Plaintiff and Class Members are entitled to a judgment against the Defendants and unnamed Defendants in an amount no less than $75,000.00.

58. That the Defendants, their officers, directors, agents, employees, and successors and all other persons acting or claiming to act on their behalf and all Co-Conspirators be enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining, or renewing the alleged combination and conspiracy, or from engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect.

### COUNT TWO - VIOLATION OF SECTION 1 OF THE SHERMAN ACT- 15 U.S.C. § 1
### UNREASONABLE RESTRAINT OF TRADE -  GROUP BOYCOTT/ REFUSAL TO DEAL

59. Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

60. Defendants and their Co-Conspirators, specifically, OSU and IMG/WME by and through Defendants' and Co-Conspirators' officers, directors, employees, agents, or other representatives, entered into various contractual agreements and conspiracy in restraint of trade to effectuate a group boycott of Plaintiff and the Class Members.  (See Ex.'s A – D).

61. Defendants' group boycott / refusal to deal encompasses Defendants' concerted refusal to compensate Class Members for use of their names, images, and likeness, and to otherwise concertedly act to prevent Class Members from being compensated for use of their images,

in the United States and its territories and possessions, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). (See Ex.'s A – D).

62. Defendants' group boycott/ refusal to deal includes concerted actions whereby Defendants and Co-Conspirators have essentially impeded Plaintiff and Class Members ability to maximize on future post-competition compensation rights, and attempts to restrict them from access to the market via dealings such as those set forth in the NIKE/OSU License Agreement (See Exhibit A).

63. Defendants' group boycott/ refusal to deal also includes Defendants' ongoing concerted action to deny Class Members compensation in the form of royalties for the continued use of their names, images, and likeness for profit, including, but not limited to, those certain dealings of and concerning the Honda Banner Program, other licensing programs with Co-Conspirators, and those Agreements by and between NIKE and OSU. (See Ex.'s A – D).

64. Plaintiff and the Class Members received less than they otherwise would have received for the use of their names, images, and likeness in a competitive marketplace were thus damaged, and seek to recover for those damages.

65. Defendants and its/their Co-Conspirators' total abridgment of compensation rights for Plaintiff and the Class Members are a blanket, *per se* restraint of trade, and are not connected to any legitimate non-commercial goal. (See Ex.'s A – D). Defendants' actions are solely to enhance revenue for themselves and their for-profit business partners, by cutting costs, i.e., eliminating the need to pay any compensation to Plaintiff and the Class Members for the continuing commercial exploitation of their images and likenesses. Defendants' actions have no relationship to any alleged goal of advancing OSU's "educational or institutional objectives," as Plaintiff and the Class Members as former

student-athletes of the Football Program at the Ohio State University, by definition, are no longer members of the Football Program under the control of Defendant OSU. Thus, the actions of Defendants seek to directly regulate a commercial market and therefore are illegal.

66. IMG/WME has facilitated this illegal group boycott/refusal to deal and has financially benefited from it. (See Ex.'s A – D).

67. As a direct and proximate result of Defendants' group boycott, Plaintiff and the Class Members have been injured and financially damaged in amounts which are presently undetermined. Plaintiff's and Class members' injuries consist of denial of compensation for use of their names, images, and likeness and attempts to restrict their usage of the same. Plaintiff's and Class Members' injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful. (See Ex.'s A – D).

68. Plaintiff alternatively pleads that the Defendants' group boycott/ refusal to deal violates Section 1 of the Sherman Act and their concerted actions violate the "rule of reason" antitrust analysis. (See Ex.'s A – D).

69. Defendants' and their Co-Conspirators' have collectively conspired to restrict Plaintiff and the Class Members from utilizing their own names, images, and likeness illegally denying compensation to Plaintiff and the Class Members for continued use of their images in unreasonable restraint of trade.

70. Defendants' group boycott fails the "rule of reason" antitrust analysis, as its anticompetitive effects substantially outweigh any alleged pro-competitive effects that may be offered by Defendants, including that their collusive conduct is shielded by its concept of "amateurism" or pro-educational purpose. Reasonable and less restrictive alternatives are

available to Defendants and Co-Conspirators' current anticompetitive practices. (See Ex.'s A – D).

71. Plaintiff and the Class Members are entitled to a permanent injunction that terminates the ongoing violations alleged in this Complaint.

72. Plaintiff and Class Members are entitled to a judgment against the Defendants and unnamed Defendants in an amount no less than $75,000.00.

73. That the Defendants, their officers, directors, agents, employees, and successors and all other persons acting or claiming to act on their behalf and all Co-Conspirators be enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining, or renewing the alleged combination and conspiracy, or from engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect.

### COUNT THREE – VIOLATIONS OF 15 U.S.C. § 1125, *ET SEQ.* (ALSO KNOWN AS THE LANHAM ACT)

74. Plaintiff incorporates all the preceding paragraphs by reference as if fully rewritten herein.

*75.* Defendants by and through their actions described throughout this Complaint have violated 15 U.S.C. § 1125, *et seq.*

76. By and through Defendants' actions, Plaintiff and Class Members believe that they have been and/or are likely to be damaged by Defendants' actions.

77. Pursuant to 15 U.S.C. § 1125(a), *et seq.*, civil liability is created for "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely

to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsor-ship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a).

78. Pursuant to 15 U.S.C. § 1125(a)(2), the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity." 15 U.S.C. § 1125(a)(2).

79. Defendant OSU is an instrumentality of the State of Ohio.

80. Defendant OSU, as an instrumentality of the State of Ohio, is subject to civil liability under 15 U.S.C. § 1125(a).

81. Plaintiff and Class Members are highly recognized figures in or around the United States.

82. Plaintiff and Class Members are highly recognized figures in or around the State of Ohio.

83. Plaintiff and Class Members are highly recognized figures in the State of Ohio.

84. Plaintiff and Class Members are highly recognized because, among other things, their accomplishments while attending college and participating in OSU's Football Program. (See Ex.'s A - D).

85. Plaintiff's and Class Members' successes on and off the field have made them highly recognizable to many people, including, current and former students at OSU, the general public, OSU sports fans, collegiate athletics fans, and professional football fans. (See Ex.'s A - D).

86. Plaintiff and Class Members, as a result of their personal, amateur, and professional accomplishments, have obtained a certain amount of good will among many people, including, but not limited to, current and former students at OSU, the general public, OSU sports fans, collegiate athletics fans, and professional football fans.

87. Defendants and Co-Conspirators are capitalizing on Plaintiff's and Class Members' personal, amateur, professional accomplishments and good will by, among other things, entering into for-profit licensing/marketing agreements, posting banners, or images depicting Plaintiff and certain Class Members while they were competing in athletic events while attending OSU. (See Ex.'s A – D).

88. Evidently, Defendants are attempting to persuade Ohio Stadium visitors to purchase certain products and/or supplies because said products and/or supplies perform at a high level, just like Plaintiff and Class Members did while they were participating in sporting events while attending OSU. (See Ex.'s A – D).

89. Various images were/are displayed prominently around the OSU campus including, Ohio Stadium, Value City Arena, and the Woody Hayes Facility, which contain or contained Plaintiff and Class Members' names and photographs/images, which are actual depictions of Plaintiff and Class Members while they were participating in the Football Program while attending school at OSU. (See Ex.'s A – D).

90. Those various images which were/are displayed prominently around the OSU campus including, Ohio Stadium, Value City Arena, and the Woody Hayes Facility, which contain or contained Plaintiff and Class Members' names and photographs/images, are/were actual depictions of Plaintiff and Class Members while they were participating in sporting events while attending school at OSU. (See Ex.'s A – D).

91. Visitors to Ohio Stadium, Value City Arena, and the Woody Hayes Facility, and/or any other athletic venue on or about the Ohio State University campus are likely confused, mistaken or deceived as to the affiliation, connection, or association of Plaintiff and Class Members with Defendants, or the origin, sponsorship, or approval of Defendant's and/or Co-Conspirator's commercial activities, including, but not limited to, HONDA and NIKE, services and/or products. (See Ex.'s A – D).

92. As a direct and proximate result of the wrongful conduct of Defendants, Co-Conspirators and Unnamed Defendants Plaintiff and Class Members have been damaged and are entitled to the following remedies: a permanent injunction against commercial marketing, sale, and use of the Plaintiff and Class Members names and likeness with corporate sponsors, confiscation and destruction of offending products (including banners, jerseys, pictures, and all other marketing material), damages and attorney's fees.

93. Upon information and belief Defendants and Unnamed Defendants actions as alleged herein was committed with knowledge that such conduct was intended to be used to cause confusion, or cause mistake, or to deceive.

94. Plaintiff and the Class Members are entitled to a judgment against Defendants and Unnamed Defendants in an amount no less than $75,000.

95. Defendants and Unnamed Defendants violation of § 43(a) of the Lanham Act has caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff and the Class Members good will and business in an amount that cannot be presently ascertained, leaving Plaintiff and the Class Members with no adequate remedy at law. Plaintiff and the Class Members are therefore entitled to injunctive relief under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96. Plaintiff and Class Members alternatively plead that as a direct and/or proximate result of Defendants' and Unnamed Defendants actions, Plaintiff and Class Members are likely to be damaged.

### COUNT FOUR – VIOLATIONS OF R.C. 4165, ET SEQ.

97. Plaintiffs incorporate all the preceding paragraphs by reference as if fully rewritten herein.

98. Pursuant to R.C. 4165, *et seq.*, "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:

    a. [c]auses [a] likelihood of confusion or misunderstanding as to the . . . sponsorship [or] approval of goods or services;

    b. [c]auses [a] likelihood of confusion or misunderstanding as to affiliation, connection, or association with . . . another; or

    c. [r]epresents that goods or services have sponsorship [or] approval . . . that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

    *See* R.C. 4165.02(A)(2, 3, and 7).

99. Defendants have violated R.C. 4165, *et seq*.

100. Defendant OSU routinely advertises and/or promotes the sale of OSU and/or third-party products, services, and/or goods. (See Ex.'s A – D).

101. Defendant IMG/WME routinely advertises and/or promotes the sale of third-party products, services, and/or goods. (See Ex.'s A – D).

102. Defendant OSU, by and through its agents, predecessors, successors, employees, contractors, assignees, Co-Conspirators, and assignors (as appropriate), in the course of its

business, vocation, and/or occupation, routinely advertise and/or promote the sale of OSU and/or third-party products, services, and/or goods.

103.    Defendant IMG, by and through its agents, predecessors, successors, employees, contractors, assignees, Co-Conspirators and assignors (as appropriate), in the course of their business, vocation, and/or occupation, routinely advertise and/or promote the sale of products, services, and/or goods.

104.    Defendants have violated R.C. 4165, *et seq.*, by causing a likelihood of confusion and/or misunderstanding as to Plaintiff's and Class Members' **sponsorship** of goods or services related to Defendants and/or Co-Conspirators. *See* R.C. 4165.02(A)(2).

105.    Defendants have violated R.C. 4165, *et seq.*, by causing a likelihood of confusion and/or misunderstanding as to Plaintiff's and Class Members' **approval** of goods or services of Defendants and/or Co-Conspirators. *See* R.C. 4165.02(A)(2).

106.    Defendants have violated R.C. 4165, *et seq.*, by causing a likelihood of confusion and/or misunderstanding as to Plaintiff's and Class Members' **affiliation with** Defendants and/or Co-Conspirators. *See* R.C. 4165.02(A)(3).

107.    Defendants have violated R.C. 4165, *et seq.*, by causing a likelihood of confusion and/or misunderstanding as to Plaintiff's and Class Members' **connection with** Defendants and/or Co-Conspirators. *See* R.C. 4165.02(A)(3).

108.    Defendants have violated R.C. 4165, *et seq.*, by causing a likelihood of confusion and/or misunderstanding as to Plaintiff's and Class Members' **association with** Defendants and/or Co-Conspirators. *See* R.C. 4165.02(A)(3).

109.    Defendants have violated R.C. 4165, *et seq.*, by representing Defendants' and/or Co-Conspirators' goods or services have the **sponsorship** of Plaintiff and Class Members

when Defendants nor the Co-Conspirators have the **sponsorship** of Plaintiff and Class Members. *See* R.C. 4165.02(A)(7).

110.     Defendants have violated R.C. 4165, *et seq.*, by representing that Defendants and/or Co-Conspirators' goods or services have the **approval** of Plaintiff and Class Members when Defendants do not have the **approval** of Plaintiff and Class Members.  *See* R.C. 4165.02(A)(7).

111.     Defendants have violated R.C. 4165, *et seq.*, by representing that Defendants and/or Co-Conspirators has the **sponsorship** of Plaintiff and Class Members when they do not have the **sponsorship** of Plaintiff and Class Members. *See* R.C. 4165.02(A)(7).

112.     Defendants have violated R.C. 4165, *et seq.*, by representing that Defendants and/or Co-Conspirators have the **approval** of Plaintiff and Class Members when they do not have the **approval** of Plaintiff and Class Members. *See* R.C. 4165.02(A)(7).

113.     Defendants have violated R.C. 4165, *et seq.*, by representing that Defendants and/or Co-Conspirators have an **affiliation with** Plaintiff and Class Members when they do not have the **affiliation with** Plaintiff and Class Members. *See* R.C. 4165.02(A)(7).

114.     Defendants have violated R.C. 4165, *et seq.*, by representing that Defendants and/or Co-Conspirators have a **connection with** Plaintiff and Class Members when they do not have a **connection with** Plaintiff and Class Members. *See* R.C. 4165.02(A)(7).

115.     Plaintiff and the Class Members are entitled to a judgment against Defendants and Unnamed Defendants in an amount no less than $75,000.

116.     Defendants and Unnamed Defendants acts or failures to act demonstrated malice, aggravated or egregious fraud, and oppression. Plaintiff and the Class Members suffered

actual damages that resulted from those acts or failures to act of Defendants and Unnamed Defendants.

117.     Plaintiff and the Class Members are entitled to an award of punitive damages in an amount to be determined at trial against Defendants and Unnamed Defendants together with costs of this action and reasonable attorney's fees.

118.     Pursuant to R.C. 4165, *et seq*., a person who commits a deceptive trade practice, as listed in section 4165.02 of the Revised Code is entitled to commence a civil action for injunctive relief against the other person for injunctive relief and to recover actual damages from the person who commits the deceptive trade practice. (See Ex.'s A – D).

### COUNT FIVE – VIOLATIONS OF R.C. 2741, *ET SEQ*.

119.     Plaintiffs incorporate all the preceding paragraphs by reference as if fully rewritten herein.

120.     Pursuant to R.C. 2741, *et seq*., a person shall not use any aspect of an individual's persona for commercial purpose.

121.     Pursuant to R.C. 2741.01(A), an individual's "**persona**" includes, an individual's name, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value.

122.     Defendants have hung banners and/or engaged in additional for-profit licensing and/or marketing ventures by depicting banners and/or marketing material containing the last name and photographs, images and/or the likenesses of Plaintiff and additional Class Members around Ohio Stadium, Value City Arena, and other locations on or about the Ohio State University Campus. (See Ex.'s A – D).

123.     Pursuant to R.C. 2741.01(B), a "**commercial purpose**" is the use of or reference to an aspect of an individual's persona, including, but is not limited to, for the advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities.

124.     Defendants use of or reference to Plaintiff's and Class Members' personas is for the advertisement or solicitation of the purchase of products, merchandise, goods, services, or other commercial activities by and among Defendants.

125.     Pursuant to R.C. 2741.01(C), "**name**" means the actual, assumed, or clearly identifiable name of or reference to a living or deceased individual that identifies the individual.

126.     Defendants have used the last names of Plaintiff and certain Class Members on the banners and other media at the Ohio Stadium, Value City Arena, and other locations which host athletic events on or about the Ohio State University Campus. (See Ex.'s A – D).

127.     Pursuant to R.C. 2741.02, a person shall not use any aspect of an individual's persona for a commercial purpose during the individual's lifetime or for a period of sixty years after the date of the individual's death, unless that person obtains the written consent to use the individual's persona, as further set forth in R.C. 2741, *et seq*.

128.     Defendants have used aspects of Plaintiff's and Class Members' persona for a commercial purpose. (See Ex.'s A – D).

129.     Defendants have used aspects of Plaintiff and Class Members persona during their lifetimes and/or during the period of sixty years after the date of some of the Class Members' death.

130.     Pursuant to R.C. 2741.01(F), "**written consent**" includes written, electronic, digital, or any other verifiable means of authorization.

131.     Plaintiff and Class Members have not provided written consent (as defined under R.C. 2741.01(F)), to Defendants for the use of their personas, specifically, with respect to for-profit ventures.

132.     Specifically, Plaintiff and Class Members have not provided written consent (as defined under R.C. 2741.01(F)), to Defendants for the use of their personas, with respect to the for-profit ventures described herein. (See Ex.'s A – D).

133.     Defendants have used aspects of Plaintiff and Class Members persona without Plaintiff's and Class Members' written consent, as set forth in R.C. 2741, *et seq*.

134.     Pursuant to R.C. 2741.01(D), "**right of publicity**" means the property right in an individual's persona to use the individual's persona for a commercial purpose.

135.     Defendants have violated Plaintiff's and Class Members' right of publicity.

136.     Defendants have violated Plaintiff's and Class Members' right of publicity by, including but not limited to, displaying banners depicting Plaintiff and Class Members throughout the Campus, including in and around Ohio Stadium. (See Ex.'s A – D).

137.     Defendant OSU's use of Plaintiff's and Class Members' personas is not subject to the exception contained in R.C. 2741.09(A)(5).

138.     Pursuant to R.C. 2741.09(A)(5), an individual's persona can be used by an institution of higher education if:

     d.  The individual is or was a student at, or a member of the faculty or staff of, the institution of higher education; and

e.  The use of the individual's persona is for educational purposes or for the promotion of the institution of higher education and its educational or institutional objectives.

139.    Defendant OSU's use of Plaintiff's and Class Members' personas is not used for the promotion of the institution of higher education and its educational or institutional objectives. (See Ex.'s A – D).

140.    Defendant OSU's use of Plaintiff's and Class Members' personas is used for the promotion of an ancillary objective (i.e. its for-profit ventures with Defendants IMG/WME and/or Co-Conspirators and the sale and/or promotion of other Defendants and/or Co-Conspirators' commercial activities, services, and/or products).

141.    Defendants have violated Plaintiff's and Class Members' rights of publicity in their respective individual personas, as set forth in R.C. 2741, *et seq*.

142.    Plaintiff and the Class Members are entitled to a judgment against Defendants and Unnamed Defendants in an amount no less than $75,000.

143.    Defendants and Unnamed Defendants acts or failures to act demonstrated malice, aggravated or egregious fraud, and oppression. Plaintiff and the Class Members suffered actual damages that resulted from those acts or failures to act of Defendants and Unnamed Defendants.

144.    Plaintiff and the Class Members are entitled to an award of punitive damages in an amount to be determined at trial against Defendants and Unnamed Defendants together with costs of this action and reasonable attorney's fees.

### COUNT SIX – ACCOUNTING

145.    Plaintiffs incorporate all the preceding paragraphs by reference as if fully rewritten herein.

146.     As a result of Defendants' aforementioned conduct with Co-Conspirators, Defendants have received money, a portion of which is due to Plaintiff and the Class Members from Defendants. (See Ex.'s A – D).

147.     The amount of money due from Defendants to Plaintiff and the Class Members is unknown to Plaintiffs and cannot be ascertained without an accounting of the transactions by and between Defendants and/or any receipts and/or disbursements derived from the aforementioned transactions. Plaintiffs' allege that the amount due to Plaintiffs is in excess of $75,000.00. (See Ex.'s A – D).

148.     Plaintiff and the Class Members hereby demand an accounting of the aforementioned transactions from Defendants and payment of the amounts found due as Defendants have failed and/or refused, and continue to fail and/or refuse, to render such an accounting and/or pay such sum.

### COUNT SEVEN- UNJUST ENRICHMENT

149.     Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

150.     Defendants have been unjustly enriched as a result of the unlawful conduct detailed herein at the expense of Plaintiff and Class members.  Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred upon them via their wrongful conduct, and it would be unjust for them to be allowed to do so. (See Ex.'s A – D).

151.     Plaintiff seeks disgorgement of all Defendants' profits resulting from the wrongful conduct described herein and the establishment of a constructive trust from which Plaintiff and the Class members may seek restitution.

<u>C<small>OUNT</small> E<small>IGHT</small> – A<small>CTION</small> F<small>OR</small> D<small>ECLARATORY</small> R<small>ELIEF</small></u>

152.     Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

153.     Defendant OSU and Co-Conspirator NIKE have combined to injure Plaintiff and Class Members by and through the allegations and causes of action set forth herein. (See Ex. A).

154.     Defendant OSU and Co-Conspirator NIKE through their actions have injured Plaintiff and Class Members in such a way that it is not competent for one person alone to accomplish. (See Ex. A).

155.     For the reasons set forth throughout this Complaint, Plaintiff and Class Members hereby seek declaratory relief thereby establishing that that the language set forth in those OSU's agreements with those certain entities, including, but not limited to, that certain license Agreement with Nike, which refers to the "Legends of the Scarlet and Gray" vintage jersey licensing program, and any similar contracts and/or agreements regarding future compensation rights and/or the rights of Plaintiff and the Class Members with respect to their rights in and to their name, image, and/or likeness and/or ability to sell jerseys and/or other merchandise be declared as void and unenforceable. (See Ex. A).

**WHEREFORE**, Plaintiff and Class Members prays for judgment against Defendants, jointly and severally, and its/their Co-Conspirators, jointly and severally, as follows:

1. Assume jurisdiction of this case;

2. That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

3. That the contract, combination, or conspiracy, and the acts done in furtherance thereof by Defendants and/or its/their Co-Conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act (15 U.S.C. §1);

4. That judgment be entered for Plaintiff and Class Members against Defendants and/or its/their Co-Conspirators for three times the amount of damages sustained by Plaintiff and Class Members as allowed by law, together with the costs and expenses of this action, including reasonable attorneys' fees, including, but not limited to, those permitted under Section 1 of the Sherman Act (15 U.S.C. §1 and/or R.C. 2741.07(D);

5. Award Plaintiff and Class Members actual damages, including any profits derived from and attributable to the unauthorized use of an individual's persona for a commercial purpose as determined under division (A)(2) of R.C. 2741.07;

6. Award Plaintiff and Class Members actual damages in an amount to be determined at trial not less than $75,000.00;

7. Award Plaintiff and Class Members the maximum economic, non-economic, actual, general, other, and statutory damages sought under each Count of this Complaint;

8. Award Plaintiff and Class Members costs and reasonable attorney's fees, including, pursuant to R.C. 4165.03 and/or 15 U.S.C. §15 and/or Count 3 of the Complaint;

9. Plaintiff and Class Members have been damaged and are entitled to the following remedies: a permanent injunction against commercial marketing, sale, and use of the Plaintiff and Class Members names and likeness with corporate sponsors, confiscation and destruction of offending products (including banners, jerseys, pictures, and all other marketing material), damages and attorney's fees.

10. Issue a declaratory judgment that Plaintiff and Class Members are entitled to Declaratory relief declaring as void and unenforceable any contracts and/or agreements that purport to have caused Plaintiff and Class Members to relinquish rights to compensation for use of their images after they are no longer student-athletes;

11. Issue a declaratory judgment declaring as void and unenforceable any and all provisions of the licensing agreements by and between Defendant OSU and NIKE of and concerning the "Legends of the Scarlet and Gray, Vintage Jersey Program";

12. Issue a declaratory judgment declaring as void and unenforceable any and all provisions of the licensing agreements by and between Defendant OSU and IMG that purport to have caused Plaintiff and Class Members to relinquish rights to compensation for use of their images after they are no longer student-athletes;

13. That Defendants, their Co-Conspirators, their affiliates, successors, transferees, assignees, licensees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner, continuing, maintain, or renewing the contract, combination, or conspiracy alleged herein, or from engaging in any other contract, combination, or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

14. Grant Plaintiff and Class Members prejudgment and post-judgment interest; and

15. Grant such other and further relief as this Court deems proper.

**(SEE SIGNATURES ON THE FOLLOWING PAGE)**

Respectfully submitted,


*/s/ Brian K. Duncan* _____
Brian K. Duncan (0080751)
**BKD LEGAL, LLC**
119 East Granville Street
Sunbury, Ohio 43074
Phone:  (740) 965-1347
Fax:      (614) 386-0410
bduncan@bkdlegal.com
*Trial Counsel for Plaintiffs*


*/s/ Bryan Thomas* _____
Bryan D. Thomas (0084659)
*Of Counsel*


*/s/ Anthony R. McGeorge* _____
Anthony McGeorge (0093475)
*Of Counsel*


# JURY TRIAL DEMANDED

Plaintiff and Class Members respectfully request a jury trial on all triable issues.


*/s/ Brian K. Duncan* _____
Brian K. Duncan (0080751)