**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES C. SPIELMAN aka CHRIS SPIELMAN, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 2:17-CV-00612-MHW-KAJ |
| *Plaintiff*, | ) ) | |
| vs. | ) ) | JUDGE MICHAEL H. WATSON |
| IMG COLLEGE, LLC, [IMG WORLDWIDE, INC., WME ENTERTAINMENT ("WME"), DBA IMG, DBA INTERNATIONAL MANAGEMENT GROUP DBA OHIO STATE IMG SPORTS MARKETING] and THE OHIO STATE UNIVERSITY (aka "OSU") and JOHN DOES 1-10, ABC COMPANIES 1-10, | ) ) ) ) ) ) ) ) ) | **MOTION TO DISMISS OF DEFENDANTS IMG COLLEGE, LLC; IMG WORLDWIDE, INC.; WME ENTERTAINMENT; INTERNATIONAL MANAGEMENT GROUP; OHIO STATE SPORTS MARKETING** |
| *Defendants*. | ) ) | |

The Complaint of Plaintiff Charles C. Spielman includes IMG College, LLC and its affiliated entities (collectively, "IMG") as defendants. But any proceeding against IMG in the absence of The Ohio State University ("the University") could never create appropriate relief, and would impair the University's interests. The University must be dismissed due to its sovereign immunity; as a result, it is an "indispensable party" as defined by Rule 19(b). To protect the University against unfairness, the Court should dismiss the case entirely.

In addition, the Complaint should be dismissed because it gives no facts to show that IMG has done anything wrong, and therefore does not satisfy Rule 8(a)(2).

Pursuant to Fed. R. Civ. Proc. 12(b)(7) and/or (12)(b)(6), IMG requests that all of the claims against it be dismissed, for the reasons given in the attached memorandum in support, which is attached hereto and incorporated herein by reference.

Respectfully submitted,


_/s/ Joseph A. Castrodale_
JOSEPH A. CASTRODALE (0018494)
GREGORY J. PHILLIPS (0077601)
JAMES E. VON DER HEYDT (0090920)
**BENESCH, FRIEDLANDER, COPLAN &
   ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  jcastrodale@beneschlaw.com
gphillips@beneschlaw.com
jvonderheydt@beneschlaw.com

NICHOLAS J. SECCO (_pro hac vice_ pending)
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone:  (312) 212-4955
nsecco@beneschlaw.com

_Attorneys for Defendants IMG College, LLC; IMG Worldwide, Inc.; WME Entertainment; International Management Group; Ohio State Sports Marketing_

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES C. SPIELMAN aka CHRIS SPIELMAN, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | CASE NO. 2:17-CV-00612-MHW-KAJ |
| *Plaintiff*, | ) ) | |
| | ) | |
| vs. | ) | JUDGE MICHAEL H. WATSON |
| | ) | |
| IMG COLLEGE, LLC, [IMG WORLDWIDE, INC., WME ENTERTAINMENT ("WME"), DBA IMG, DBA INTERNATIONAL MANAGEMENT GROUP DBA OHIO STATE IMG SPORTS MARKETING]  and THE OHIO STATE UNIVERSITY (aka "OSU") and JOHN DOES 1-10, ABC COMPANIES 1-10, | ) ) ) ) ) ) ) ) ) | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS IMG COLLEGE LLC; IMG WORLDWIDE, INC.; WME ENTERTAINMENT; INTERNATIONAL MANAGEMENT GROUP; OHIO STATE SPORTS MARKETING** |
| | ) | |
| *Defendants*. | ) | |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION .................................................................................................... 1

II. THE ALLEGATIONS OF THE COMPLAINT ..................................................... 1

III. GOVERNING LAW ............................................................................................... 4

    A. Rule 12(b)(7)..................................................................................................... 4

    B. Rule 12(b)(6).................................................................................................... 5

IV. ARGUMENT ........................................................................................................... 6

    A. Because the University Must Be Dismissed from This Action, It Is
    an "Indispensable" Party and IMG Should Be Dismissed As Well....................... 7

        1. The University is a Necessary Party under Rule 19(a) .............................. 8

        2. The University Must Be Dismissed due to Its Sovereign
        Immunity .................................................................................................. 9

        3. Because the University Must Be Dismissed, IMG Should
        Be Dismissed as Well under Rule 19(b) ..................................................... 9

    B. The Complaint States No Cause of Action Against IMG.................................... 12

        1. Spielman Alleges No Wrongdoing by IMG .............................................. 12

        2. IMG Cannot Be Liable for a Violation of Publicity Rights
        that Do Not Exist .................................................................................... 16

V. CONCLUSION........................................................................................................ 17

## I.  INTRODUCTION

According to Plaintiff Charles C. Spielman ("Spielman" or "Plaintiff"), The Ohio State University ("the University") has used his likeness wrongfully without paying him.  On behalf of himself and a putative class of current and future alumni of the University, Spielman asks the Court to award him a share of "substantial revenue streams" allegedly associated with that use, and a number of declarations and injunctions.  (Amended Complaint ("Complaint"), Doc. 7, at ¶ 5.)

Defendant IMG College, LLC, and the other affiliated entities listed in the caption to the Complaint[1] (collectively, "IMG") should be dismissed as a necessary consequence of the University's sovereign immunity.  The University is an indispensable party under Rule 19(b); under the same principles that led to dismissal in *Jentgen v. Asplundh Tree Expert Company*, this litigation should not proceed in the University's absence.  *See* No. 2:12-CV-1218, 2013 WL 12180654 (S.D. Ohio Mar. 5, 2013).

In addition, the Complaint should be dismissed because it does not allege that IMG has used Spielman's likeness; does not allege that IMG controls any associated revenue streams; and does not allege that IMG could do anything in the future to prevent harm to Spielman or any other athlete.  Under Rule 8(a)(2), the Complaint states no claim against IMG, and should be dismissed for that independent reason.

## II.  THE ALLEGATIONS OF THE COMPLAINT

Spielman's Complaint does not describe any specific conduct of IMG.  Instead, scattered through the text, it includes conclusory statements that only mention IMG in passing.  In fact, ***all*** the Complaint's allegations about IMG fall into one of four categories:

---

[1] The caption is ambiguous about whether Spielman actually intends to sue all the IMG companies that are listed in brackets after "IMG College, LLC."  In an abundance of caution, this motion is filed on behalf of all of them.

1

- Identification of IMG — a "for-profit entity" who is generally involved "routinely" with marketing activities.[2]

- Mentions of IMG, without specifying its role, as one of several "Defendants" "and/or" "Co-Conspirators" who — along with 20 or more "John Does … and various other persons" — were all involved in unspecified wrongdoing.[3]

- Conclusory statements that the University acted — in an unspecified way — "by and through" IMG.[4]

- Conclusory statements that IMG "facilitated" the University's conduct in an unspecified way, or passively "benefited" from such conduct.[5]

None of the Complaint's references to IMG, either direct or indirect, states that IMG took any specified action that harmed Spielman or any of the University's other alumni. Nowhere in the Complaint are there allegations of what IMG allegedly did; how it has been able to restrain trade, in likenesses or anything else; or how it would benefit from doing so. Indeed, the Complaint describes no possible transaction that would ever have involved IMG potentially paying Spielman anything.

According to the Complaint, Spielman is entitled to certain remedies; however, IMG is not alleged to be needed or even useful for any of them. Spielman says it would be reasonable if, instead of "OSU's 'zero compensation' policy," the University set up "group-licensing methods" or provided "funds for health insurance, additional educational or vocational training, and/or pension plans." (*Id.* ¶ 10.) Because the University allegedly took unreasonable measures instead of these programs, the Complaint seeks damages for wrongdoing; disgorgement of revenues; and restitutionary payments. (*Id.* ¶ 11.) In addition, the Complaint seeks a declaration voiding the University's "agreements with co-conspirator Nike." (*Id.*) And an injunction is sought to forbid any future "contracts and/or agreements regarding future compensation rights … with respect to

---

[2] Compl., Doc. 7 ¶¶ 18, 101, 103.
[3] *Id.* ¶¶ 2, 4, 6, 21-24, 50, 60, 140.
[4] *Id.* ¶¶ 5, 17.
[5] *Id.* ¶¶ 7, 47, 51, 66.

Plaintiff and the Class Members." (*Id.* ¶ 12.) Conspicuously absent, however, are any allegations that IMG is party to, or intends to be a party to, any contract or agreement involving Spielman or any Class Member.

Walking through the Complaint reveals nothing about IMG's role in any alleged wrongdoing. The document's opening sections (¶¶ 1-24) provide no facts that link IMG with Spielman's grievance. For example, Spielman cites Exhibit A to support an allegation about wrongful "perpetual licenses." (*Id.* ¶ 6.) But Exhibit A is a contract between Nike and the University that does not mention IMG. There are no factual allegations linking IMG with Exhibit A, or specifying IMG's role in any other "act" or transaction involving Spielman, any putative class member, or any license transaction.

Next, and crucially, ***the fact section of the Complaint does not mention IMG at all***. (*Id.* ¶¶ 25-44.) It mentions "Defendants" in the plural, but not until its final paragraph. (*Id.* ¶ 44 ("Plaintiff … did not provide … Defendants or its/their co-conspirators … permission to engage in for-profit licensing/marketing programs with Defendants").)

In Count One, Spielman alleges only that "IMG/WME ***has facilitated*** [the University's] illegal [license] scheme and has financially benefitted from the same." (*Id.* ¶¶ 50, 51 (emphasis added).) In Count Two, likewise, Spielman says that "IMG/WME ***has facilitated*** [the University's] illegal group boycott/refusal to deal and has financially benefited from it." (*Id.* ¶ 66 (emphasis added).) But nothing in these Counts or elsewhere specifies what IMG did. The contracts and licenses attached to the Complaint do not mention IMG. (*Id.* Exs. A & D.)

In Count Four, the Complaint says that "Defendants" "caus[ed] a likelihood of confusion and/or misunderstanding" (*id.* ¶¶ 104-108) or "represent[ed]" something to the public (*id.* ¶¶109-114), but, again, does not say what ***IMG*** did that had these alleged effects.

3

Counts Three, Five, Six, Seven, and Eight do not mention IMG.

In the Complaint's prayer for relief, IMG is not mentioned except in item 12.  Spielman asks the court to declare "void and unenforceable any and all provisions of the licensing agreements by and between Defendant OSU and IMG that purport to have caused Plaintiff and Class Members to relinquish rights to compensation."  (*Id.* at p. 34, Prayer for Relief 12.)  The Complaint does not describe the actual content or practical effect of any such alleged contractual provision, or plead facts to suggest why there might be any such provision.

## III.   GOVERNING LAW

### A.    Rule 12(b)(7)

A complaint in federal court is subject to dismissal if it does not properly bring before the Court **all** defendants who are "indispensable" to adjudication of the dispute.  *See* Fed. R. Civ. Proc. 12(b)(7) & 19.  Indispensability is found when a party is "necessary" to the action under Rule 19(a); when it cannot be joined; and when its absence makes it impossible for the case to proceed in "good conscience" under the factors of Rule 19(b).  *Jentgen v. Asplundh Tree Expert Co.*, No. 2:12-CV-1218, 2013 WL 12180654, at *4 (S.D. Ohio Mar. 5, 2013) (dismissing case challenging the rights of an absent third party who could not be joined).

State government entities whose interests may be affected by an adjudication, but who are immune in federal court, are quintessential indispensable parties.  *See White v. Univ. of California*, 765 F.3d 1010, 1028 (9th Cir. 2014) ("when the necessary party [under R. 19(a)] is immune from suit, there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor [necessitating dismissal]") (internal quotation marks omitted).  Moreover, "it is a 'fundamental principle' that 'a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.'"  *Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005) (internal citation omitted).

4

### B.     Rule 12(b)(6)

To withstand a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), a complaint must include "***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added); *see 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (rejecting "conclusory allegations in the complaint that the defendant violated the law," as "the sufficiency of a complaint turns on its 'factual content'") (quoting *Iqbal*, 556 U.S. at 683). As a result, a federal court dismisses a Complaint if it "do[es] not plead facts that plausibly suggest that ***each defendant*** is liable for the claims in the Complaint" (emphasis added).  *See Anthony v. Harmon*, No. CIV 2:09-2272, 2009 WL 4282027, at *2 (E.D. Cal. Nov. 25, 2009); *see also id.* (holding *Iqbal* not satisfied where "plaintiffs' allegations repeatedly lump defendants together" and contend implausibly that "each defendant was the agent, employee, and employer of each of its co-defendants").

In assessing a complaint, the Court at this stage "accepts as true all factual allegations, but … does not apply this presumption of truth to conclusory or legal assertions." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016).  In the antitrust context specifically, "a district court must retain the power to insist on some specificity in pleading" at the Rule 12 stage. *Mich. Division–Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 731–32 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)); *e.g.*, *Novel v. Zapor*, No. 2:14-CV-264, 2015 WL 12734021, at *10 (S.D. Ohio Mar. 11, 2015) (requiring economic specifics for antitrust complaint).

Federal courts consistently dismiss causes of action under Rule 12(b)(6) where a "complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct." *Appalachian Enterprises, Inc. v. ePayment Sols., Ltd.*,

No. 01 CV 11502, 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004); *see, e.g.*, *All Cities Realty, Inc. v. Hollymax Realty, Inc.*, No. SACV08195, 2009 WL 10670615, at *5 (C.D. Cal. Oct. 20, 2009) (dismissing defendants whose "role in the alleged infringement is unclear" where complaint merely "assert[ed], without elaboration, that [defendant] 'knowingly participated' in [an infringing] marketing campaign"; without factual content, it was "virtually impossible to assign responsibility for the alleged acts of infringement to any particular defendant"). Without appropriate factual support, blanket allegations against "defendants" as a collective do not state a claim. *Georgandellis v. Holzer Clinic, Inc.*, No. 2:08-CV-626, 2009 WL 1585772, at *17 (S.D. Ohio June 5, 2009) (dismissing complaint as to certain defendants because of complaint's failure to "specif[y] as to how each [of them] allegedly violated the anti-trust laws").

## IV. ARGUMENT

IMG fully supports the University's Motion to Dismiss, and agrees that federal-court jurisdiction over the University is lacking. (Mot. to Dismiss, Doc. 14, pp. 2-6.)

Moreover, as the University has pointed out (*id.* pp. 6-20), the Complaint fails to state viable antitrust or other federal claims against any Defendant, and the Court should decline to take ancillary jurisdiction over the state-law claims. IMG hereby adopts the University's arguments for dismissal in their entirety.

IMG should be dismissed from the case for two additional reasons:

***First,*** because of the University's Eleventh Amendment immunity (*see id.*, pp. 2-6) and the nature of the claims Spielman asserts, the University is an "indispensable" party for purposes of Rules 19(b) and 12(b)(7). The case must be dismissed rather than proceeding in the University's absence.

***Second***, even on the closest reading, the Complaint does not specifically allege that IMG ***did anything*** in connection with any alleged wrongdoing, or is about to do anything wrongful

6

that should be prevented. All the University's arguments under the *Twombly/Iqbal* plausibility standard therefore, as detailed below, apply even more strongly to IMG. Dismissal is proper under Rule 12(b)(6) as to all claims against IMG in the Complaint.

### A. Because the University Must Be Dismissed from This Action, It Is an "Indispensable" Party and IMG Should Be Dismissed As Well

The University must be dismissed from this action. (*See* Mot. to Dismiss, Doc. 14, pp. 2-6.) In this context, Rule 12(b)(7) requires dismissal of the claims against IMG as well, as a secondary consequence of the University's Eleventh Amendment immunity. Analyzing such situations under the Rule 19(b) framework, courts consistently find that state universities are "indispensable," and that therefore other parties should be dismissed where the university is immune. *See, e.g.*, *Danimer Sci., LLC v. Metabolix, Inc.*, No. 1:10-CV-102, 2010 WL 11470126, at *8 (M.D. Ga. Nov. 16, 2010) (dismissing case against private defendant because co-defendant state university was "a necessary and indispensable party not subject to suit in this Court due to its sovereign immunity"). The Court should dismiss the case with prejudice.

As laid out above, analysis under Rule 12(b)(7) incorporates Rules 19(a) and 19(b) in sequence. *Jentgen*, 2013 WL 12180654, at *3 (S.D. Ohio Mar. 5, 2013). Using Rule 19(a), the Court determines whether the party is "necessary," either because complete relief is impossible without it or because an interest it holds may be undermined, "as a practical matter," by a judgment in its absence. *Id.* If a party is found "necessary," the Court next determines whether it can be joined or remain in the action without destroying subject-matter jurisdiction. *Id.* If not, the court must "analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case." *Id.* (internal quotation omitted). Accordingly, the Court weighs

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)     the extent to which any prejudice could be lessened or avoided …;

(3)     whether a judgment rendered in the person's absence would be adequate; and

(4)     whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. Proc. 19(b).

### 1.     The University is a Necessary Party under Rule 19(a)

Spielman seeks a ruling that could affect a number of activities on the University campus. (Compl. ¶ 12, 71, 73, 95; prayer for relief 9.)  He also seeks to hold liable anyone involved, even tangentially, in such activities.  (*E.g., id.* ¶ 72.)  And he requests a ruling that could implicate a number of University contracts.  (*Id.* ¶¶ 11, 56, 155; prayers for relief 10-12.)  Given the relief Spielman seeks, the University is "necessary" under Rule 19(a), using any of its three prongs.

Rule 19(a)(1)(B)(i) provides that a party is "necessary" if it holds an interest that could be affected, "as a practical matter," by the proceeding.  Here, the University has a clear "interest" in the legality of its on-campus marketing activities and all of its associated rights.  Moreover, it is a signatory to all the contracts that Spielman is challenging.  The University holds an obvious "interest," within the meaning of Rule 19(a)(1)(B)(i), in preserving the practical value of its rights.

This case is similar to *Jentgen*, which involved an easement held by the utility company Ohio Edison.  Because there would have been no diversity jurisdiction with Ohio Edison in the case, the plaintiff sued a different defendant, alleging that — under color of Ohio Edison's easement while acting on Ohio Edison's behalf — the defendant had violated plaintiff's rights. The Court held:  "Whether any of Plaintiffs' rights have been violated will necessarily depend on an adjudication of Ohio Edison's rights under the Easement. […] [I]f the Court finds for Plaintiffs on their declaratory judgment action, that decision may impair Ohio Edison's ability to

protect its interest in the Easement in the future" for purposes of Rule 19(a)(1)(B)(i).  *Jentgen*, 2013 WL 12180654, at *4.  In light of its intellectual-property rights, its rights under statutory law, and its contracts, the University is necessary here for the same reasons.

In addition, and independently, the University is necessary under Rule 19(a)(1)(A), which finds a party necessary if relief would be "inadequate" in its absence.  Declarations or injunctions against IMG would not bind any other entity; therefore, no "adequate" relief is possible for Spielman in the University's absence.  And the University is "necessary" under Rule 19(a)(1)(B)(ii), which addresses the problem of inconsistent outcomes for a defendant who would remain if the case were not dismissed.  Even if IMG were to lose here, the Court of Claims, or another court with subject-matter jurisdiction, might issue a contrary ruling in favor of the University.  This might (under Spielman's theory of the case) cause IMG to have contract or other obligations, to the University or others, that would be inconsistent with this court's judgment.  Rule 19 is designed to prevent subjecting a party to such inconsistent rulings.

### 2. The University Must Be Dismissed due to Its Sovereign Immunity

For the reasons the University has given, it cannot be a party to this action without destroying the Court's subject-matter jurisdiction.  (*See* University's Mot. to Dismiss, Doc. 14 at 2-6.)

### 3. Because the University Must Be Dismissed, IMG Should Be Dismissed as Well under Rule 19(b)

Because the University is "necessary" under any of the three prongs of Rule 19(a), and cannot remain in the case, the Court must determine whether the case should proceed against IMG alone under the four "indispensability" factors of Rule 19(b).  *Jentgen*, 2013 WL 12180654, at *4.  All four factors weigh in favor of dismissal.

As a threshold matter, courts have often noted that sovereign immunity, by itself, weighs heavily in favor of dismissal in the Rule 12(b)(7) context.  Litigation against a third party in a case like this one undermines the state's immunity and, in itself, creates prejudice for the state.  *E.g.*, *Detroit Int'l Bridge Co. v. Gov't of Canada*, 192 F. Supp. 3d 54, 69 (D.D.C. 2016) (because of the "compelling" nature of sovereign immunity, where a state "is both necessary and immune from suit, the Court faces a 'more circumscribed inquiry' under Rule 19(b)") (internal citation omitted).

Under the first Rule 19(b) factor, for the reasons discussed above, it is plain that the University's ability to protect its interests could be impaired by a judgment in its absence.  *See Cyanotech Corp. v. U.S. Nutraceuticals, LLC*, No. CIV. 12-00352 JMS, 2013 WL 504862, at *8 (D. Haw. Feb. 7, 2013) (holding R. 19(b)(1) satisfied where "the court has already determined that the University should be joined because [it owns] rights [that] could be impaired without it having participated in the suit").  In fact, Spielman is challenging at least two University contracts — a quintessential example of the type of prejudice that makes a party indispensable.  *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) ("[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable").

As explained above, moreover, the University's interests could be impaired by ***any*** ruling in its absence about its promotional activities — whether in the form of an order examining such activities retrospectively, enjoining them prospectively, or addressing their legality.[6]  Here as in

---

[6] Nor should the University be forced to rely on IMG to defend its interests, which are not identical.  *See Jentgen*, 2013 WL 12180654, at *4 ("Ohio Edison has an interest in preserving all of its rights under the Easement; [the third-party defendant's] interest is in preserving the validity of its contract with Ohio Edison and avoiding liability").

*Jentgen*, the alleged harm centers on the exercise of rights claimed by a party who cannot be joined. Under color of the absent utility company's easement, the defendant in *Jentgen* allegedly trespassed on plaintiff's rights; here, in the same way, IMG might be — at most — complicit in actions that someone allegedly took under color of the University's statutory, contract, and intellectual-property rights. IMG has an interest in "preserving the validity of its [own] contract with [the University] and avoiding liability," not in protecting all of those rights owned by the University. *See Jentgen*, 2013 WL 12180654, at *4. Moreover, the absent party in *Jentgen* was a private nondiverse company, *id.*; here, the University is actually immune from federal jurisdiction. It implements state policies that may not be trammeled in federal court.[7] As in *Jentgen*, the first factor of Rule 19(b) strongly supports dismissal.

No creative tailoring of a judgment can address this problem; thus, the second factor of Rule 19(b) supports dismissal as well. *See, e.g.*, *Detroit Int'l Bridge*, 192 F. Supp. 3d at 69-70 ("Given the relief sought by [plaintiff] — which would require a conclusion that the [disputed] Agreement is invalid under Michigan law — and the sovereign immunity of the State of Michigan, 'there is no way the court can avoid the prejudice' that would result from invalidating the Agreement in Michigan's absence.") (internal citation omitted).

Under the third 19(b) factor, it is plain that a judgment rendered in the University's absence would not be "adequate" from the perspective of any party. This factor "refers to the public stake in settling disputes by wholes, whenever possible … and the avoidance of multiple litigation." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008). Here, without the University as a party, this Court cannot fully resolve the underlying controversy over likeness

---

[7] Among other things, if Spielman had stated a claim, litigation of this case would require intrusive discovery into the way Ohio implements its policies and programs, to determine whether *Parker* antitrust immunity applies to the University's athletic and marketing efforts. *See generally North Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, 1109 (2015) (describing protection for state policies against federal regulation of markets). This process would defeat the purpose of the sovereign immunity granted to Ohio by the Eleventh Amendment.

rights.  There is no allegation that IMG decides how to handle payments for the use of likenesses in the University's stadium or elsewhere, or that it is free to pay current or former NCAA athletes for use of their likenesses.  No meaningful judgment can issue where the Court lacks necessary jurisdiction.  Moreover, any state court or other tribunal addressing the University as a party on these issues would have to adjudicate them anew, and may well reach a different result.

The fourth factor — whether Plaintiff "would have an adequate remedy if the action were dismissed" — also weighs strongly in favor of dismissal.  As the University notes, Spielman can proceed in the Ohio Court of Claims.  (Mot. to Dismiss, Doc. 14 at 20.)

All four factors of Rule 19(b) indicate that this case should not proceed in "equity and good conscience" without the University, and dismissal is called for.  The analysis shows, moreover, that any attempt by Spielman to re-plead his complaint would be futile; therefore, the dismissal should be with prejudice.

### B.    The Complaint States No Cause of Action Against IMG

The Complaint should be dismissed for the independent reason that it does not satisfy Rule 8(a)(2):  it ascribes no factual conduct whatsoever to IMG, relying exclusively on summary legal conclusions and inadequate collective allegations against multiple defendants.

### 1.    Spielman Alleges No Wrongdoing by IMG

A complaint must include facts to "show" what each defendant did wrong.  Fed. R. Civ. Proc. 8(a)(2); *Iqbal*, 556 U.S. 662, 680–81 (2009) (dismissing claim that relied on conclusory allegations certain defendants were "'instrumental' in adopting and executing [an illegal policy]").  A plaintiff may not rely on vague legal conclusions, as "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Id.* at 686.  Here, Spielman's Complaint alleges no facts to show IMG's involvement in any alleged wrongdoing.

As a first step under Rule 12(b)(6), the Court should ignore the recitations of statutory elements in Counts Three and Four.  (*See, e.g.*, Compl. ¶ 114 (alleging that "Defendants have violated R.C. 4165, *et seq.*, by representing that Defendants and/or Co-Conspirators have a **connection with** Plaintiff and Class Members when they do not have a **connection with** Plaintiff and Class Members") (emphasis in original).)   Under *Iqbal*, such formulaic boilerplate that quotes statutory elements — completely devoid of factual content — is not entitled to any presumption of truth.  *See, e.g., Lech v. Third Fed. Sav.*, No. 2:13-CV-518, 2014 WL 12647016, at *4 (S.D. Ohio Feb. 11, 2014) (holding "threadbare recital of the elements of a cause of action … insufficient to state a claim").

There are no actionable facts about IMG wrongdoing elsewhere in the document, either. In the fact section, the collective noun "Defendants" is used only once (to allege that no defendant has express permission to use former athletes' likenesses), and ***"IMG" is not mentioned at all***.

In two places, the Complaint includes conclusory allegations that purport to characterize IMG's wrongdoing.  (*See* Compl. at ¶¶ 51 & 60 (identical statements, with no elaboration, that IMG "***facilitated*** [the University's wrongful conduct] and has financially ***benefited*** from it") (emphasis added).)  But these allegations are not facts — they are legal "labels and conclusions," *Iqbal*, 556 U.S. at 678, not entitled to the presumption of truth.  *See A.G.* ex rel. *Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 81 (1st Cir. 2013) ("When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are:  naked conclusions.").

There is no description in the Complaint of how IMG "facilitated" anything, or how it "benefited" commercially — especially where the exhibits attached to the Complaint do not

mention IMG, or give any indication of its involvement.  *See 16630 Southfield Ltd. P'ship*, 727 F.3d at 506 (holding "naked assertions devoid of further factual enhancement" to be "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency").  To state a claim against a defendant, a Complaint may not rely on vague statements without specifying that party's role in causing plaintiff's alleged harm.  *E.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1354 (11th Cir. 2016) (dismissing claims that were "pled in a wholly conclusory manner unsupported by any factual averments concerning the specific roles played by the vendors to support [the allegedly wrongful] purpose [and] without offering any factual averments to make the assertion plausible").  Spielman's conclusory "facilitated" and "benefited" allegations do not give him a claim against IMG.

Finally, the Complaint lumps together IMG and the University (among others) with allegations about all "Defendants and Co-Conspirators."[8]  But it nowhere identifies what **IMG** itself has actually done that harmed Spielman.  Where there is no factual context to give them substance, under Rule 12(b)(6) courts routinely ignore lumped-together allegations against multiple parties.  *See VanZandt v. Oklahoma Dep't of Human Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008) ("To carry their burden, plaintiffs under the *Twombly* standard must do more than generally use the collective term 'defendants.'"); *Regents of the Univ. of California v. Aisen*, No. 15-CV-1766, 2016 WL 4096078, at *4 (S.D. Cal. Apr. 22, 2016) (dismissing claims of intellectual-property misuse against defendants who were "mentioned only once in the [complaint's] substantive allegations, and even in that mention only as members of a larger collective group").  The same result is called for here.

Nor can Spielman's "information and belief" recitations about an unbounded conspiracy allow him to proceed against IMG.  (*See* Compl. ¶ 24 (alleging generally that "Defendants and

---

[8] Compl., Doc. 7, ¶¶ 2, 4, 6, 21-24, 50, 60, 140.

each Co-Conspirator ratified and/or authorized the wrongful acts of Defendants and each of the other Co-Conspirators").)  Under *Twombly* and *Iqbal*, a plaintiff cannot evade the requirement to allege wrongdoing by each defendant simply by stating that there was a "conspiracy."  Thus Spielman gains nothing by reciting, without any associated facts, that the University acted "by and through" IMG in unspecified ways.  (Compl. ¶¶ 5, 17.)  *See, e.g.*, *Alan DeAtley, NAPI (Colorado) LLC v. Keybank Nat. Ass'n*, No. 12-CV-02973, 2013 WL 4502296, at \*6 (D. Colo. Aug. 23, 2013) (dismissing claims because conspiracy allegations, "[w]ithout specific factual assertions linking" each defendant with the wrongdoing, were "conclusory and insufficient to demonstrate 'specific facts showing an agreement and concerted action' ").

Since it does not say what IMG has allegedly done wrong, the Complaint fails to state a claim against IMG under any theory.   For example, nowhere does the Complaint set forth facts to explain, or even suggest, what role IMG played in any alleged events that could have deceived the public in violation of the Lanham Act.  A viable Lanham Act claim must allege specific facts to show that each defendant "use[d]" the disputed material in a deceptive way.  *E.g.*, *Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815, 836 (M.D. Tenn. 2015) (quoting 15 U.S.C. § 1125(a)), *aff'd*, 668 F. App'x 155 (6th Cir. 2016).  Here, the Complaint alleges no conduct by IMG that can constitute "use" of Spielman's likeness.  Nor is there any plausible claim of "likelihood of confusion" in the Complaint's allegations about a large number of stadium banners identifying game sponsors.[9]  (Compl., Doc. 7, ¶¶ 36-38.)  As the Sixth Circuit noted in a similar case:  "The theory here is that if, say, ESPN shows a banner for 'Tostitos' at the bottom of the screen during a football game, then consumers might become confused as to whether all the players on the screen endorse Tostitos.  Suffice it to say that ordinary consumers have more sense than the theory itself does."  *Id.* (affirming dismissal under R. 12(b)(6)).

---

[9] *See also* Mot. to Dismiss, Doc. 14, pp 17-19.

In sum, Spielman's claims against IMG fall far short of the *Twombly/Iqbal* standard; indeed, since the Complaint does not identify IMG's conduct, it would not even satisfy the pleading standard that prevailed before *Twombly* and *Iqbal*.  *See Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04–60602 CIV, 2006 WL 4590705, *5 (S.D. Fla., April 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] Complaint fails to satisfy the minimum standard of Rule 8."); *Howard v. Mun. Credit Union*, No. 05 Civ. 7488, 2008 WL 782760, *12 (S.D.N.Y. Mar. 25, 2005) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each defendant on notice of what they allegedly did or did not do.").  A plaintiff may not use "quantities of conclusory, legalistic language to conceal the absence of well-pleaded factual allegations" against each defendant he seeks to hold liable.  *AK Steel Corp. v. United Steel Workers of Am.*, No. C-1-00-374, 2002 WL 1624290, at *5 (S.D. Ohio Mar. 30, 2002).

As IMG is not properly alleged to have been involved in any violation of law, the claims against it should be dismissed.

## 2. IMG Cannot Be Liable for a Violation of Publicity Rights that Do Not Exist

Even if the Complaint properly alleged (which it does not) that IMG had committed unlawful acts in connection with the University's use of Spielman's image, "use" of former student-athletes' likenesses on behalf of a state university is immunized as a matter of Ohio law. Under an express exemption, Spielman and the putative class members can have no cause of action under the Ohio Right of Publicity Act related to use of their likenesses by "an institution of higher education … ***for the promotion of the institution of higher education*** and its educational or institutional objectives."  Rev. Code § 2741.09(A)(5)(b) (emphasis added).  (*See*

Mot. to Dismiss, Doc. 14 at 20 n.1.)  There is no precedent interpreting this statute.[10]  To give effect to this black-letter law, the University's agents, contractors, and vendors (like IMG) must be immunized as well, whether they are employees, marketing representatives, printers, broadcasters, or graphic designers.

Accordingly, IMG cannot be liable to Spielman under the Ohio law or federal theories that depend upon it.  *See Marshall*, 668 F. App'x at 157 (Sixth Circuit holding "meritless" student-athlete's antitrust claim alleging "scheme to fix at zero the price of the plaintiffs' putative [likeness] rights" because as a matter of state law, for college athletes in competition, "those putative rights do not exist").  Ohio state policy as expressed in the exemption of Rev. Code § 2741.09(A)(5) bars such claims from proceeding against any defendant, in any court.

## V.    CONCLUSION

For the reasons given above, IMG respectfully requests that the Court dismiss the Complaint with prejudice.

---

[10] The appropriate reach of this exemption to cover university vendors and contractors seems to be a matter of first impression.  At a minimum, if the Court perceives ambiguity in the scope of Ohio's policy, it should refrain from addressing the dispute and defer to the Ohio courts.  *See* 28 U.S.C. § 1367(c)(1) (encouraging federal court to decline ancillary jurisdiction over a dispute that raises a "novel … issue of State law").

*/s/ Joseph A Castrodale*
JOSEPH A. CASTRODALE (0018494)
GREGORY J. PHILLIPS (0077601)
JAMES E. VON DER HEYDT (0090920)
**BENESCH, FRIEDLANDER, COPLAN &
  ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  jcastrodale@beneschlaw.com
gphillips@beneschlaw.com
jvonderheydt@beneschlaw.com

NICHOLAS J. SECCO (*pro hac vice* pending)
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone:  (312) 212-4955
nsecco@beneschlaw.com

*Attorneys for Defendants IMG College, LLC;
IMG Worldwide, Inc.; WME Entertainment;
International Management Group; Ohio State
Sports Marketing*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2017, a copy of the foregoing Defendant IMG

College's Motion to Dismiss was filed electronically. Notice of this filing will be sent by

operation of the Court's electronic filing system to all parties indicated on the electronic filing

receipt. Parties may access this filing through the Court's system.


  /s/ *Joseph A. Castrodale*
Joseph A. Castrodale
*One of the Attorneys for Defendants IMG College, LLC; IMG Worldwide, INC.; WME Entertainment; International Management Group; Ohio State Sports Marketing*