**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHARLES C. SPIELMAN aka CHRIS SPIELMAN, on behalf of himself and all others similarly situated, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| vs. | ) ) |
| IMG COLLEGE, LLC, et al., | ) ) |
| *Defendants*. | ) ) ) ) ) ) ) ) ) |

CASE NO. 2:17-CV-00612-MHW-KAJ

JUDGE MICHAEL H. WATSON

**OPPOSITION OF DEFENDANTS IMG COLLEGE, LLC; IMG WORLDWIDE, INC.; WME ENTERTAINMENT; INTERNATIONAL MANAGEMENT GROUP; OHIO STATE SPORTS MARKETING TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff Chris Spielman ("Spielman" or "Plaintiff") is requesting permission to voluntarily dismiss his claims against The Ohio State University ("OSU"), which are barred by the doctrine of sovereign immunity.[1]  With his Motion for Leave to File a third federal complaint ("Motion," Doc. 29), Plaintiff asks to circumvent that doctrine, improperly, by targeting IMG College, LLC (along with its affiliates, "IMG").  But he seeks exactly the same sweeping relief that would inevitably and directly compromise the rights and interests of OSU — and now, the rights and interests of eighty-eight other universities as well.

Plaintiff has not cured any of the fatal defects in his initial filing; instead, he has made them worse.  The proposed new complaint is futile, and the motion should be denied.

---

[1] Whether voluntarily or involuntarily, OSU should be dismissed for the unrebutted reasons stated in OSU's pending Motion to Dismiss.  (*See* Doc. No. 14.)

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

In its operative language, the Proposed Third Complaint (Doc. 29-1) is essentially identical to the first two (Docs. 1 & 7).  (*See* Ex. A attached (blueline showing edits).)  In particular, the new document replicates the old complaints in the most important way:  even while it purports to drop OSU as a defendant, it asks for all the same relief altering the rights and interests of OSU itself.  (*See* Doc. 29-1 at pp. 47-48; Ex. A at pp. 49-51.)  But as Plaintiff tacitly admits, OSU is immune from this Court's jurisdiction.  Under Rule 19(b), the requested judgments and declarations affecting OSU's rights and interests cannot be litigated in its absence.  (*See* IMG's Mot. to Dismiss, Doc. 22 at 7-11.)

Unable to hide or correct his Complaint's fatal indispensable-party problem, Plaintiff now seeks to multiply that problem many times over.  On behalf of a putative nationwide class, he asks for leave to pursue judgments and orders that would affect the rights and interests of public and private schools all over the country.  If the Motion were granted, it would vastly increase, not reduce, the number of schools who would potentially be prejudiced by this litigation in their absence.

Can a federal plaintiff solve the problem of ***one*** indispensable party by creating ***eighty-eight more*** indispensable parties, of the same kind, nationwide?  (*See* Doc. 29-1 at ¶ 24 (listing schools from "Air Force" to "Wyoming").)

No.  Under the Constitution and under Rule 19(b), Spielman's proposed lawsuit — nominally against IMG[2] and another OSU contractor (Nike) — may not be used to scrutinize and adjudicate the legality of alleged promotional activity at and by ***eighty-nine*** FBS colleges and universities (across their athletics, alumni, student-life, marketing, public-relations, and

---

[2] Spielman has apparently declined IMG's invitation to identify the relevant IMG entity and drop the others as parties; instead, he has proposed to add three ***additional*** IMG entities without apparent investigation.  Again, in an abundance of caution, this Response is filed on behalf of all IMG entities listed in the First Amended Complaint.

admissions offices) in thirty-seven states. In the absence of the schools as parties, the Rules do not empower Spielman to seek declarations expressly nullifying all those schools' existing marketing contracts (not just with IMG, but directly with their sponsors); undermining their copyrights and rights created by state statutes; and effectively enjoining all use of archival and other materials that depict former students in order to benefit those schools on their own campuses.

Plaintiff's proposed pleading does nothing to make such a litigation appropriate, with respect to OSU alone or with respect to the eighty-eight other FBS colleges and universities. Instead, the Motion and its Proposed Third Complaint are a bid to circumvent the sovereign immunity created by the Eleventh Amendment, as well as the law of personal jurisdiction for federal courts. In effect, Plaintiff asks the Court to make IMG a proxy for dozens of schools who are outside the Court's reach in this action. Every single one of those absent schools is either immune; created and governed by a wide array of state statutes and charters; and/or not subject to personal jurisdiction in Ohio on any theory. The Court should decline Spielman's invitation to adjudicate their rights and impair their interests. *See* Fed R. Civ. Proc. 19(b).

In addition, the Court should reject the Proposed Third Complaint — like the first two — on the merits. As explained in the two Motions to Dismiss filed two and a half months ago (Docs. 14 & 22), Plaintiff's case theories do not state a claim under the law. There is no antitrust violation alleged, no "unfair competition," and no privacy tort; in fact, with a specific statutory provision, the Ohio legislature has expressly authorized state schools to use former students' likenesses for their institutional aims. Spielman's proposed edits do nothing to redress these problems with allegations of specific facts. As shown in the description of amendments below at § III, not a single proposed edit enhances the prior factual allegations to help them satisfy

*Twombly*, *Iqbal*, or the pleading requirements for the statutes involved. (*See* Ex. A, *passim*; OSU's Mot. to Dismiss, Doc. 14 at 6-20; IMG's Mot. to Dismiss, Doc. 22 at 12-16.)

But the Court need not reach the substance of the allegations under Rule 12(b)(6). It need not extrapolate the facts missing from the Complaint; comb through the 235 pages of contract exhibits that Spielman attaches but fails to cite; or address any of the fatal substantive problems with Spielman's theories of liability. With OSU entitled to dismissal and the other eighty-eight alleged "Co-Conspirators" beyond the Court's jurisdiction, the analysis under Rule 12(b)(7) overwhelmingly favors dismissal for failure to effectively join indispensable parties. As a result, the Motion should be denied on grounds of futility.

## II.      GOVERNING LAW

### A.      Rule 15(b)

"Amendment is futile if a proposed amended complaint could not survive a motion to dismiss." *Galaria v. Nationwide Mut. Ins. Co.*, No. 2:13-CV-118, 2017 WL 4987663, at *1 (S.D. Ohio Aug. 16, 2017) (denying motion for leave to file amended complaint) (citing *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 574 (6th Cir. 2010)).

### B.      Rule 12(b)(7)

A complaint in federal court is subject to dismissal if it does not properly bring before the Court all defendants who are "indispensable" to adjudication of the dispute. *See* Fed. R. Civ. Proc. 12(b)(7) & 19; *Jentgen v. Asplundh Tree Expert Co.*, No. 2:12-CV-1218, 2013 WL 12180654, at *4 (S.D. Ohio Mar. 5, 2013) (dismissing case challenging the rights of an absent third party who could not be joined).

### C.      Rule 12(b)(6)

In assessing a complaint under Rule 12(b)(6), the Court "accepts as true all factual allegations, but … does not apply this presumption of truth to conclusory or legal assertions."

*Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016); *e.g.*, *Novel v. Zapor*, No. 2:14-CV-264, 2015 WL 12734021, at *10 (S.D. Ohio Mar. 11, 2015) (requiring economic specifics for antitrust complaint).

## III.    THE PROPOSED THIRD COMPLAINT

The Court has ordered responses to the Motion to focus solely on "the sufficiency of [Spielman's] proposed amendments." (Doc. 33.) At this point, Defendants need not even revise the existing arguments from OSU's and IMG's pending Motions to Dismiss: virtually all of those arguments apply ***equally,*** and ***in exactly the same way,*** to the Proposed Third Complaint (Doc. 29-1). For the Court's convenience, a blueline is attached to show the changes Plaintiff made to the Complaint since OSU and IMG filed their Motions to Dismiss two and a half months ago. (*See* Ex. A hereto.) The operative language of Plaintiff's pleading iterations, factual and legal, is identical.

Thus IMG incorporates, as if fully rewritten here, its prior description of the operative Complaint's allegations from two months ago. (IMG's Mot. to Dismiss, Doc. 22, at 1-4.) Almost every word of that description still applies. The only exceptions result from the following phrasing edits Plaintiff has carried out:

- In several places, the operative Complaint conclusorily recited that "***[OSU acted] by and through its business partners*** including, but not limited to Defendant IMG/WME and its Co-Conspirators" (emphasis added). Spielman now proposes to flip the sentence, and allege the same conduct was committed by "***Defendants, by and through their business partners*** and co-conspirators, including [OSU]." (Doc. 29-1 at ¶ 5 (emphasis added); *accord* ¶¶ 17, 53, 104.)[3]

---

[3] *But cf. id.* ¶ 5 (later in the same paragraph, inexplicably alleging that "Defendants" entered into agreements "by and through Defendant IMG").

- In two places, the operative Complaint conclusorily recited that "IMG/WME has facilitated this illegal scheme [of OSU's] and has financially benefited from the same." Now, Spielman proposes to allege instead that "***Defendants***, jointly and severally, and/or by and through their dealings with co-conspirators, have facilitated this illegal scheme and has [sic] financially benefited from the same." (¶ 59 (emphasis added); *accord* ¶ 75.)

To accompany these superficial phrasing changes, there is no elaboration of IMG's alleged role in any wrongdoing. The inadequate, lumped-together allegations and unexplained causal links of the prior complaints are unchanged. (*See* IMG's Mot. to Dismiss at 2-4, 12-16.) In several places, the resulting allegation is misplaced, as where Spielman alleges that the proposed "Defendants" (here, IMG and Nike) systematically "exploit Former Players previously subject to their control."[4] (*Id.* ¶ 4.)

In addition, other changes are scattered through the document with the presumed aim of enhancing the Complaint. But none of them redresses the indispensable-party problem — or any of the other, equally fatal pleading defects identified in the Motions to Dismiss.

- Spielman attaches new exhibits — contracts demonstrating OSU's marketing relationship with IMG College. (Proposed Ex. A, Doc. 29-2.) But (except for the legally inconsequential indemnity clause[5]) not a single provision from these documents is cited, addressed, or even mentioned in the Proposed Third Complaint. (Doc. 29-1 at ¶ 69.) Spielman identifies no provision of any contract, attached or otherwise, that plausibly

---

[4] IMG has never had "control" over Spielman (whether in 1984-88 or any other time) or any other college athlete, and there is no plausible basis to suspect that Nike has either.

[5] "The Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 431 (1997); *see also Bailey v. Ohio State Univ.*, 487 F. Supp. 601, 604–06 (S.D. Ohio 1980) (holding OSU immune under the Eleventh Amendment regardless of whether state treasury funds would in fact pay any damages award).

harmed or could harm him either by restraining trade or by potentially deceiving the public.

- OSU is not technically a defendant in the Proposed Third Complaint (*id.* p. 1 (caption)); however, the same judgments and injunctions undermining OSU's interests are sought, in the same language. (*Id.* at 45–47; Ex. A at 49–51.)

- Spielman proposes to alter a prior reference to unspecified merchandise depicting "OSU games": the allegation in the Proposed Third Complaint would refer to unspecified merchandise depicting "***events/***games." And an allegation referencing "OSU's website" would be altered to read "***various*** websites." (Doc. 29-1 at ¶ 5 (emphasis added); Ex. A at 6.)

- Spielman alleges that not just OSU, but many other universities across the country "***also*** use the Former Players likeness in ***various advertisements, marketing materials, donation requests, and other for-profit uses***." (Doc. 29-1 at ¶ 49 (*sic*; emphasis added).) He does not allege that IMG does these things. This vague new allegation is not linked with or referenced in any cause of action. No example of a wrongful university "donation request," or any of the other alleged misuses, is described or attached.

- The Proposed Third Complaint now describes a putative class that would include tens of thousands of current and former athletes from all over the country. (*Id.* ¶ 1.) No factual examples are alleged related to any other school's campus, but the verbal formulas previously used to allege wrongdoing on OSU's campus are cut-and-pasted to accuse all the other schools of the same wrongdoing. (*Compare, e.g.*, ¶ 39 *with* ¶ 48.)

- An allegation that "many more licenses would be sold" if not for Defendants' alleged misconduct is altered to say that "many more licenses/***products*** would be sold." (*Id.* ¶ 55

(emphasis added).)  The Proposed Third Complaint provides no plausible explanation of why that would be the case, or any viable allegations of an antitrust market.

- Spielman proposes to alter a sentence about an alleged system of wrongdoing run by "OSU," in order to allege that the replacement Defendants are the masterminds of the same alleged system:  "***Defendants***, in conjunction with [eighty-nine schools], have organized, maintained, and operated an unjust, perpetual system consisting of its dealings with the Defendants and others, which … system … has been further facilitated by Defendants."  (*Id.* ¶ 7 (emphasis added); Ex. A at 6–7.)

- Spielman has dropped Exhibit B from the prior Complaint, which depicted banners of football players including Spielman, and retained Exhibit C, which depicts banners of athletes in other sports, even though Spielman's revised class is now composed solely of football players.  (Doc. 1–3; Doc. 29-1 at ¶ 1.)

There are no other material changes to the operative allegations of the prior Complaints.

In substance, then, the amendments proposed in the Motion represent nothing but a global substitution of party names.  The effect would be to drop one school from the case (in name only), and adjudicate the rights of eighty-eight more.  If the Motion were granted, all eighty-nine schools' rights would be put at issue — but not one of those schools would be joined or joinable to the proposed action to defend its interests.[6]

---

[6] Spielman seems to imply such a configuration of parties should be allowed as a matter of course, and points to the inapposite precedent *O'Bannon v. National Collegiate Athletic Association ("NCAA")*.  (*See* Compl., Doc. 7, ¶ 5 (citing *O'Bannon*); *compare* Compl., Doc. 7 *with* Complaint in *O'Bannon*, N.D.Cal. No. 4:09-cv-3329, Doc. 1 (July 21, 2009) (verbatim).)  *See O'Bannon*, 802 F.3d 1049, 1066 (9th Cir. 2015) (finding schools' relationships with their athletes "quintessentially commercial"); *contra Bassett v. NCAA*, 528 F.3d 426, 433 (6th Cir. 2008).
    In addition to the fact that *O'Bannon* generally upheld the NCAA's practices, *O'Bannon* is distinguishable because it had no indispensable parties omitted from the lawsuit.  A single non-immune defendant was subject to the court's jurisdiction — the NCAA, a consortium constituted by the schools involved and representing their interests for purposes of Rule 19.  An order against the NCAA was adequate to relax its rules, as O'Bannon sought, and did not in itself require any school to change its practices.  *See* R. 19(a)(1)(A) and (a)(1)(B).

With respect to IMG, meanwhile, the Proposed Third Complaint offers nothing to cure the insufficiencies of Plaintiff's pleading.  As before, "None of the [Proposed Third] Complaint's references to IMG, either direct or indirect, states that IMG took any specified action that harmed Spielman or any of the University's other alumni."  (IMG's Motion to Dismiss, Doc. 22 at 6.) As before, the complete absence of specific facts plausibly alleged to support liability against IMG requires dismissal for failure to state a claim.

## IV.   ARGUMENT

The amendments Plaintiff offers solve none of the problems identified in the Motions to Dismiss.  Instead, the Proposed Third Complaint would make those defects significantly worse.

*First*, if the proposed amendments were allowed, OSU would still be an "indispensable" party for purposes of Rules 19(b) and 12(b)(7), just as IMG described in its initial Motion to Dismiss.  Instead of solving this problem, Plaintiff proposes to redouble it almost ninety times over:  the Proposed Third Complaint implicates, in exactly the same ways, the conduct and rights of all the other FBS schools listed in the Complaint.  All of them are equally indispensable, along with OSU.  This amendment is futile, and the Motion should be denied for this reason alone.

*Second*, if the proposed amendments were allowed, the Complaint would still lack an antitrust theory or other discernible wrongdoing.  Listing additional schools does not generate any plausible allegation of harming competition, harming a competitor, or deceiving the public. The Proposed Third Complaint involves no alleged horizontal agreement (or any "boycott"), no alleged predatory conduct as the Sixth Circuit defines it, no identified antitrust market, and no logical possibility of harm to competition.

*Third,* if the proposed amendments were allowed, there would still be no specific and plausible allegation that IMG itself ***did anything*** in connection with any alleged wrongdoing, or

is about to do anything wrongful that should be prevented.  Under *Twombly* and *Iqbal*, Spielman's proposed amendments do not enhance his factual allegations in any meaningful way.

**Fourth**, the procedural reasons Plaintiff gives in his Motion for amending his complaint are not true.  Contrary to his explanation in the Motion, no "new facts have occurred and been discovered" since his last amendment.  (Mot. at 1.)  And even if this explanation were true, it could not justify superimposing manifestly unworkable nationwide class theories on what is already a defective complaint.

The Motion should be denied, and the Motions to Dismiss should be granted.

**A.      The Proposed Amendments Would Create Many More Indispensable Parties**

**1.      As Before, OSU Is a Necessary Party under Rule 19(a)**

IMG explained in its initial Motion to Dismiss why OSU's presence is necessary for the dispute, in light of the issues Spielman raises and the relief he seeks.  (Doc. 22 at 8–9.)  In essence, Spielman wants the Court to decide whether OSU has the right (and could allegedly coordinate with IMG, Nike, and others) to use his image in a Buckeye jersey in honoring his place in the school's history.  Any IMG rights to use such images are entirely derivative of OSU's, and by seeking to redefine such derivative rights, Spielman necessarily seeks to redefine OSU's rights in its absence.  *See Jentgen*, 2013 WL 12180654, at *4 (holding such a collateral challenge improper under Rule 19).  Moreover, he wants to litigate whether OSU promotional and marketing activities, to the extent former athletes like him are not paid for them, violate the antitrust laws.

As previously explained, none of Spielman's allegations about OSU promotional activity on OSU's campus may be adjudicated in the absence of OSU.  (Doc. 22 at 8–9.)  Moreover, the proposed new allegations involving "marketing materials, donation requests, and other for-profit uses" would expand the case to implicate even **more** university functions, from admissions to

institutional fundraising and development.  (*See* Doc. 29-1 at ¶ 49.)  Plaintiff's aim "as a practical matter [to] impair or impede" OSU's interests is unabated.  *See* Fed. R. Civ. Proc. 19(a)(1)(B)(i).

Because Plaintiff has not altered his prayers for relief as they affect OSU in any meaningful way (*see* Ex. A at 49–51), and because the relief sought against IMG directly and necessarily implicates OSU's rights, the Proposed Third Complaint is defective under R. 12(b)(7) exactly as its predecessor was.

## 2. The Proposed Third Complaint Creates Many More Necessary Parties

In addition to seeking declarations, injunctions, and rulings invalidating OSU's contracts, Plaintiff's Proposed Third Complaint seeks the same outcomes in connection with potential activities at eighty-eight other schools all over the country.  If the Motion were granted, under Rule 19(a) these schools would become "necessary" to the litigation for the same reasons that OSU is.  (*See* IMG's Mot. to Dismiss, Doc. 22 at 8–9.)

## 3. Like OSU, None of the Schools Implicated in the Proposed Amendments Can Be Joined

More than half of the colleges listed as "Co-Conspirators" in the Proposed Third Complaint are state schools.  (*See* Doc. 29-1 ¶ 5.)  Each such school, under its founding statutes or charter, likely has the same sovereign immunity under the Eleventh Amendment as OSU does.

All the Ohio schools listed in the Proposed Third Complaint are immune instrumentalities of the state, just like OSU.  (*Compare* Ohio Rev. Code chapters 3359 (University of Akron), 3361 (University of Cincinnati), 3339 (Miami University), & 3337 (Ohio University) *with id.* chapter 3335 (OSU).)  They cannot be joined.

Of the nonpublic out-of-state schools listed, not a single one is alleged to have done anything to justify personal jurisdiction over it in Ohio.  Thus not one of the newly named "Co-

Conspirators," who are necessary just as OSU is, can be joined to the action. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (no personal jurisdiction over a defendant without "a connection between the forum and the specific claims at issue"); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 808 (N.D. Ohio 1998) (rejecting "the conspiracy theory which would impute a[n alleged] co-conspirator's jurisdictional contacts with the forum to the foreign defendant"); *see also Singh v. Daimler, AG*, 902 F. Supp. 2d 974, 981 (E.D. Mich. 2012) (same); *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 764 (6th Cir. 1999) ("in the absence of personal jurisdiction" over a necessary party, analysis under R. 19(b) is required).

Rather than making the Complaint more viable, the amendments Spielman proposes would heighten the necessity of dismissal under R. 12(b)(7).

### 4. The Proposed Addition of Nike as an Admittedly "Necessary" Party Reveals the Existence of Even More Necessary Parties

Plaintiff admits in his Motion that Nike is a "necessary defendant." (Mot. at 4.) By the same token, for purposes of Rule 19(a), all the alleged sponsors at all the other schools identified in the Complaint are "necessary" too. *See* Rule 19(a).

As the contracts show (proposed Exs. A and B, Docs. 29-2 and 29-3), IMG has nothing to do with the Nike jersey product line to which Spielman objects — "the 'Legends of the Scarlet and Gray' vintage jersey licensing program" (*e.g.*, Doc. 29-1 at ¶ 179). No order against IMG could affect this jersey program or any transaction like it. Nonetheless, Spielman wants the Nike contract nullified (Doc. 26-1 at ¶¶ 11, 178), and with this in mind, he proposes amending his Complaint to add Nike, Inc. and Nike USA, Inc. as defendants. (Doc. 26-1 at 1.)

But that proposal does not solve any procedural problems, and it immediately reveals more severe problems of the same kind. If the Motion were granted, a new indispensable-party

issue would arise in connection with *every* challenged transaction at *every* school across the putative class.[7]  Indeed, Spielman now seeks injunctions against all contracts nationwide similar to the Nike one, and "confiscation and destruction of offending products (including banners, jerseys, pictures, and all other marketing material)."  (Doc. 29-1 at 46.)  He requests this relief whether the sponsors involved are linked with IMG or — like Nike — unlinked in any way with IMG.

In the absence of the sponsors newly alleged to have obtained wrongful licenses from other schools, Spielman's newly-broadened claims cannot proceed.  Such sponsors, at all schools, would all be "necessary" — as Spielman admits Nike is — under Rule 19(a). Meanwhile, without OSU, the proposed claims with regard to Nike *still* cannot be litigated.[8] Under Rule 19, the Nike amendments make the Proposed Third Complaint worse, not better, than its predecessors.  *See Onyx Waste Servs., Inc. v. Mogan*, 203 F. Supp. 2d 777, 789 (E.D. Mich. 2002) (given wastefulness of discovery where indispensable party could not be joined, "principles of limited federal jurisdiction and judicial economy dictate dismissing this action rather than proceeding without" the unjoinable entity who was a party to the contract at issue).

### 5.  The Proposed Edits Only Reinforce the Requirement of Dismissal under Rule 19(b)

The Rule 19(b) analysis for the Proposed Third Complaint is unchanged:  Plaintiff has not complied with the mandates of the Eleventh Amendment and the Federal Rules, and cannot

---

[7] To be clear:  Spielman has not alleged and cannot allege any facts to show that IMG is a party to a substantial number of contracts involving former-student likenesses across the country.  But if such contracts did exist, his efforts to nullify them here would be improper under Rule 19.

[8] ***Both*** contracting parties — not just one of them — must be present in a litigation in order to nullify a contract. Indeed, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, ***all parties*** who may be affected by the determination of the action are indispensable." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1156 (9th Cir. 2002) (emphasis added).  Without OSU present, the Court cannot address the legality of the alleged OSU/Nike contract, let alone the OSU/IMG contract.  *See Tillman v. Apostolopoulos*, No. 10-cv-12253, 2010 WL 3584294, at *4 (E.D. Mich. Sept. 9, 2010) ("a contracting party is the paradigm of an indispensable party").

do so. *See Ali v. Carnegie Inst. of Washington*, 306 F.R.D. 20, 27 (D.D.C. 2014) ("No doubt because of the sovereign-immunity concept, the application of Rule 19 in cases involving the government reflects a heavy emphasis on protecting its [i.e., the government's] interests.") (quoting Wright & Miller, 7 Fed. Prac. & Proc. § 1617). Plaintiff's proposed edits fail to mitigate in any way — much less resolve — the indispensable-party problem described in IMG's Motion to Dismiss. (Doc. 22 at 7-12.)

All the considerations in IMG's original Motion to Dismiss still apply, and the addition of another contract — between OSU and NIKE — as proposed Exhibit A adds another source of potential prejudice for OSU. As a "practical matter" under R. 19(a)(B)(i), the judgment Spielman requests — purporting to nullify all contracts like Exhibit A and to impair associated intellectual-property rights for eighty-nine schools — would cause sweeping prejudice to numerous absent parties denied basic due process to protect their interests. *See Jamul Action Comm. v. Stevens*, No. 2:13-CV-01920-KJM, 2014 WL 3853148, at *17 (E.D. Cal. Aug. 5, 2014) (dismissing case under Rule 12(b)(7) where the requested "judgment would affect the [sovereign party's] interest in and ability to enter into contracts involving the [property at] issue"); *Tillman*, 2010 WL 3584294, at *4 ("a contracting party is the paradigm of an indispensable party").

To make matters worse, Plaintiff now seeks to amend the Complaint to insist that school-owned "pictures" of former players should be removed from all eighty-nine universities' control. (*See* Doc. 26-1 ¶ 95; *see also id.* at 46 (requesting that such materials be "confiscated"); *id.* ¶ 5 (asserting former players' rights over "stock footage").) This allegation places at issue the legality of potential conduct and transactions by dozens of schools all over the country, as well as all the schools' copyrights in their own athletic archives, recruiting materials, and publications

touching on their own legacies. *See, e.g.*, *Cyanotech Corp. v. U.S. Nutraceuticals, LLC*, No. 12-00352 JMS-RLP, 2013 WL 504862, at *7–9 (D. Haw. Feb. 7, 2013) (finding a school indispensable if "the University might well lose certain rights in its intellectual property without being present" to "participate[] in the suit"). With his edits, Spielman has only enhanced the perfect analogy with *Cyanotech* and cases like it, in which plaintiffs have attempted collateral attacks on the intellectual-property rights of public universities by suing other defendants. *E.g.*, *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1221 (Fed. Cir. 2010) (finding dismissal proper under Rule 19 in light of sovereign immunity held by the University of Texas, because its intellectual-property rights were threatened "despite the fact that it had no opportunity to defend its interests in the litigation"). Such collateral challenges to public universities are uniformly rejected in federal court. *Id.* ("We must give sufficient weight to the prejudice to UT, which is absent from this suit based on a claim of sovereign immunity.").

Because the Proposed Third Complaint cannot withstand Rule 19(b) analysis, the Motion should be denied, clearing the way for granting of both Defendants' Motions to Dismiss. *See Edwards v. U.S. Dep't of Energy*, 371 F. Supp. 2d 859, 865 (W.D. Ky. 2005), ("[i]f the sovereign has retained its immunity but is an indispensable party to the lawsuit, the only course of action available to the court [is] to dismiss the suit in its entirety"), *aff'd*, 200 F. App'x 382 (6th Cir. 2006).

**B.    The Proposed Edits to the Complaint Do Not Create an Antitrust Claim**

Even if a federal court could exercise jurisdiction over the correct and necessary parties here, there would be no possible basis for Plaintiff to proceed under the Sherman Act. OSU's Motion to Dismiss explained some of the more prominent reasons that there is no antitrust violation alleged in the operative Complaint. (Doc. 14 at 6–15.) In brief, these defects were: (1) failure to identify anything, in a contract or anywhere else, that restrains trade (Doc. 14 at 7); (2)

failure to meet the "basic definitions" of price fixing or group boycott, or allege anything other than the conduct of legitimate commercial and school activity in which Spielman was not included (*id*. 7–10); (3) failure to identify any horizontal conspiracy to support a *per se* claim (*id.* 11–13); and (4) failure to identify a relevant market, or any cognizable antitrust harm to anyone, to support a rule of reason claim (*id.* 13–15). The edits in the Proposed Third Complaint fail to address ***any*** of these defects, resulting in a proposed pleading that remains markedly hazier than even the antitrust allegations dismissed in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### 1. As Before, Spielman Identifies No Constraint on Him or Anyone Else

None of the amended language in the Proposed Third Complaint explains how Spielman or any other former college football player has been prevented from marketing his likeness or monetizing his fame. Although Spielman attaches more contracts than before, they simply show (like the previous exhibits) that OSU has done business with various parties. This is not a "restraint of trade" for purposes of the Sherman Act. (*See* OSU's Motion to Dismiss, Doc. 14 at 8-9 and 9-10.) Moreover, nothing in the revised language of the Proposed Third Complaint explains how Spielman has been or may someday be disabled from participating in any market as a result of any agreement IMG (or Nike) has entered.

The proposed amendments would do nothing to enhance any antitrust claim, since nothing in the edited language alleges any actual restraint on competition for any athlete, school, or business.[9] (*See* Ex. A.) As before, "not one of [the Proposed Third Complaint's attached] agreements limits Plaintiff's right to market any intellectual property he owns, prohibits Ohio State [or IMG] from doing business with individual players, or sets a level of acceptable

---

[9] *Cf. O'Bannon*, 802 F.3d at 1055 (addressing "financial aid rules" imposed by the NCAA on its members to constrain their competition in recruiting athletes).

compensation for any use of players' images or likenesses."  (OSU's Mot. to Dismiss, Doc. 14 at

7.)  With no restraint of trade alleged, this is simply not an antitrust case.

> ### 2. As Before, Spielman Alleges No Anticompetitive Agreement and No Vertical or Horizontal Boycott

Like the complaints before it, the Proposed Third Complaint "makes various non-specific

references to the attached contracts, but makes no attempt to identify which provisions in each

contract form the basis for the alleged price-fixing agreement."  (*See* OSU's Mot. to Dismiss,

Doc. 14 at 8.)  Spielman has attached a number of contracts between IMG and OSU, bringing the

total to 235 pages.[10]  (Docs. 29-2, 29-3, 29-4.)  But these added contracts are equally useless to

Plaintiff's claim:  they contain no provisions that forbid or discourage anyone from doing

business with Spielman.  In fact, nothing in them purports to say ***anything*** about former players

(as opposed to athletes playing in the games that IMG contracted to help broadcast and promote

(*see* proposed Ex. B, Doc. 29-3)).   Adding these documents to the Complaint makes no

difference, and cures none of the antitrust pleading deficiencies OSU identified.  *See CBCInnovis*

*v. Equifax Info. Servs. LLC*, No. 2:06-CV-654, 2008 WL 320147, at *3 (S.D. Ohio Feb. 4, 2008),

*aff'd*, 561 F.3d 569 (6th Cir. 2009) ("Both the United States Supreme Court and the Sixth Circuit

have stressed the importance of insisting on specificity in antitrust pleadings."); *see also id.*

---

[10] Plaintiff's failure to identify the relevant portions of these documents, by itself, eliminates any late-arriving antitrust theory in a forthcoming brief.  Merely attaching voluminous documents, with no explanation, does not constitute pleading.  *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 461–62 (E.D.N.Y. 2007) (where plaintiff simply mentioned each exhibit "in passing as the Amended Complaint alleges facts pertaining to it," its "failure to specifically identify ***which portions of the hundreds of pages of exhibits*** it intends to incorporate by reference into the Amended Complaint makes it impossible for the Court or the defendants" to address those exhibits or find that a claim was stated) (emphasis added); *see also id.* at 463 (rejecting such complaint's "blatant violation of Rule 8(a)(2)'s direction that a civil plaintiff provide a 'short and plain statement'").

IMG notes here that any Reply that Plaintiff files in support of his Motion will be his first attempt to provide a legal argument in support of the language and theories of his July 2017 pleading.  Given that Defendants had filed two motions to dismiss detailing the fatal defects in the current Complaint, it is telling that Plaintiff failed to substantively address these arguments at all in the Motion for Leave.  IMG has attempted to anticipate what Plaintiff's argument might be, but in the current procedural posture, it expects that a concise Surreply may be necessary to respond.

(dismissing antitrust complaint); *accord Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (affirming dismissal of complaint because "[a]ppellants failed to plead any evidentiary facts beyond parallel conduct to prove their allegation of a conspiracy").

Nor is there any value, from an antitrust standpoint, in the Proposed Third Complaint's new allegations that ***multiple*** schools are involved in supposedly wrongful contracts with IMG or with their sponsors.  To allege that IMG conducts business as a vendor and representative with multiple parties, independently of each other, creates no implication of a horizontal conspiracy among competitors, of the kind that can enhance an antitrust theory. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435–36 (6th Cir. 2008) (holding that to benefit from favorable antitrust presumptions, a Section 1 complaint "must show some horizontal relationship" among competitors, and dismissing under both *per se* and rule-of-reason standards a complaint that failed to do so).  And nothing in the amendments to the Complaint addresses any of the requirements OSU identified as missing from Spielman's prior attempt to plead a cognizable "boycott."  (*See* OSU's Motion to Dismiss at 11–13 (identifying the framework of *Northwest Wholesale Stationery and Printing Co.*, 472 U.S. 284, 294 (1985).)

### 3. As Before, Spielman Alleges No Cognizable Market Supposedly Being Constrained

Plaintiff has done nothing to enhance his allegations of a geographic or other market for the likenesses of former college-football players, or to explain how it can possibly function on the nationwide basis his amendments now attempt to invoke.  *See Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 962 (6th Cir. 2004) ("The burden is on the antitrust plaintiff to define the relevant market within which the alleged anticompetitive effects of the defendant's actions occur, [and] [f]ailure to identify a relevant market is a proper ground for dismissing a

Sherman Act claim.") (quoting *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719 (6th Cir. 2003).

The multi-school allegations add nothing to resolve Plaintiff's market-identification problem.  Indeed, they make it worse:  Spielman has not and cannot plausibly allege that any of the schools in question would compete against each other for any player's likeness or for a relationship with any sponsor.  Each school lionizes different athletes from ***its own*** history, and has no demand for images of competitors in other schools' uniforms.  And each school offers sponsors access to ***its own*** regional fan base, offering virtually no access to the fans from other schools' regions.  There is no cognizable market here.  *See Michigan Division–Monument Builders of North Am. v. Michigan Cemetery Ass'n*, 524 F.3d 726, 733 (6th Cir. 2008) (dismissal is called for where there is an "insufficiently pled or totally unsupportable proposed market").  The schools are not competitors in any relevant sense — and again, even if they were, there is no alleged agreement among them.  Plaintiff has only identified vertical agreements:  in other words, the conduct of business.  *See Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988) ("[a]bsent an allegation of anticompetitive purpose or effect at the interbrand level, we hold that [a would-be 'boycott' complaint] states nothing more than 'commercial disappointment,'" and not a Sherman Act violation).

The Complaint alleges no antitrust harm.[11]  By proposing with his amendments to expand the same, illogical antitrust theory nationwide, Spielman has done nothing to allege harm to competition or antitrust injury.  (*See* OSU's Motion to Dismiss, Doc. 14 at 14-15.)  *See Atl.*

---

[11] Notably, none of the Complaints adequately alleges antitrust predation, whether occurring in Ohio or anywhere else.  The Sixth Circuit has set clear pleading requirements for cases in which competitors are allegedly being driven out of business to allow escalating prices in the future.  *See Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 833 F.3d 680, 688 (6th Cir. 2016) ("allegations of recoupment must appear *in the complaint* to show an entitlement to relief") (emphasis in original), *cert. denied*, 137 S. Ct. 1582 (2017).  Here, Spielman has no barriers to entry in selling his own likeness, and cannot be driven out of business to allow for recoupment of Defendant losses from predatory pricing.  He has not alleged and cannot allege the elements of a predation theory.

*Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990) (holding that Sherman Act is not meant to remedy "losses that stem from competition").  The proposed antitrust claims are subject to dismissal, just as before, and the Motion to file them is futile.

### C.    Spielman Still Has No Likeness Claim

There are no new meaningful allegations to make Spielman's claims under the Lanham Act and other "unfair competition" regimes any stronger than before.  Spielman has virtually ignored the deficiencies in his pleading on these issues, and IMG therefore has little to add to the arguments previously made by both defendants.

### 1.    The Proposed New Boilerplate about "Confusion" Changes Nothing

The Proposed Third Complaint, if filed, would change nothing of any substance in connection with Plaintiff's proposed allegations of Lanham Act violations or privacy torts, for which Plaintiff still has not pleaded the specific, non-conclusory facts required to satisfy *Twombly*'s plausibility standard.  In an attempt to address the Motions to Dismiss in this regard, Plaintiff cut-and-pasted various allegations to interchange the defendants, and then added this additional conclusory language in several places in the Proposed Third Complaint:

> Upon information and/or belief, the banners and/or other advertising materials posted or caused to be posted by Defendants around the Co-conspirator Universities *would likely cause confusion or misunderstanding* to consumers and/or the general public [in various categories derived from the statute].

Doc. 29-1 at ¶ 112 (emphasis added) (as to "sponsorship of Defendants' goods or services"); ¶ 114 (same recitation as to "approval of Defendants' goods or services"); ¶ 116 (same recitation as to "affiliation with Defendants"); ¶118 (same recitation as to "connection with Defendants"); ¶ 120 (same recitation as to "association with Defendants").

For reasons already explained, such boilerplate recitation of elements does not enhance a pleading.  (*See* IMG Motion to Dismiss, Doc. 22 at 13.)  And in connection with IMG and Nike,

who were not promoted or identified to the public in connection with Spielman or any other football player, the new allegations make no sense at all.

There are other scattered amendments to the Complaint language, intended to enhance the likeness claim, but they are all repetition of statutory boilerplate or extensions of the pleading to cover "agents, predecessors, successors, employees, contractors, assignees, and assignors (as appropriate)" (*e.g.*, *id.* ¶ 104), or to cover "presently unidentifiable defendants" (*e.g.*, *id.* ¶ 94). They do nothing to cure the defects Defendants identified in their Motions to Dismiss. (*See* OSU Mot. to Dismiss, Doc. 14 at 15–19; IMG Mot. to Dismiss, Doc. 22 at 12–17.)

### 2. Without OSU in the Case, the Proposed Allegations Sketch a Novel and Untenable Aiding and Abetting Theory

Plaintiff's basic factual allegations remain the same:  banners once hung in Ohio Stadium depicting former student-athletes in their OSU uniforms.  Although the Proposed Third Complaint is confusing, it appears that Plaintiff is now seeking to pursue IMG for this conduct in the absence of its customer OSU, using some version of an "aiding and abetting" Lanham Act theory.  (*See, e.g.*, Doc. 26-1 at ¶ 95 ("upon information and belief," unspecified IMG conduct "was/were committed with knowledge that such conduct was intended to be used to cause confusion, or cause mistake, or to deceive").)  To the extent Plaintiff now seeks to pursue IMG as a marketing representative with this legal theory, in the absence of OSU, his proposal should be rejected as nonviable, in this Circuit or any other.  *See Parker v. PayPal, Inc*., No. CV 16-4786, 2017 WL 3508759, at *6 (E.D. Pa. Aug. 16, 2017) (collecting cases to reject the theory that "aiding and abetting liability applies to an unfair competition claim brought under the Lanham Act"); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint.*, Inc., 863 F. Supp. 2d 1066, 1084–85 (D. Colo. 2012) (same; Tenth Circuit precedent "does not purport to approve of aiding/abetting liability under the Act"); *see generally Am. Tel. & Tel. Co. v. Winback &*

*Conserve Program, Inc.*, 42 F.3d 1421, 1430 (3d Cir. 1994) (explaining "the Supreme Court's wariness" about novel aiding and-abetting theories "as a mechanism for imposing civil liability").

### D. The Motion Misrepresents Its Own Rationale, and Violates the Core Principles of *Twombly*, *Iqbal*, and Rule 23

#### 1. Rule 15(d) Does Not Apply

Plaintiff's Motion contends that he should be allowed to amend his Complaint again because new facts or occurrences have happened since the previous amendment. (Mot. at 1 ("new facts have occurred and been discovered since the filing of the first amended pleading"); *id.* at 3 (citing Rule 15(d)'s allowance for "any transaction, occurrence, or event that happened *after* the date of the [prior] pleading") (emphasis Spielman's).) But this is not true, as Plaintiff's filings reveal. Nothing has happened since July — no transaction, occurrence, or event — and nothing is going to happen that harms Spielman's interests. The only real "occurrences" have been the filing of two Motions to Dismiss to which Spielman has not responded, and a media campaign linked with attempts to expand the case nationwide without any basis in the facts or the Rules. These are not the "events" contemplated by Rule 15(d), as Spielman's own explanations of the rule show. (Mot. at 3–4.)

The only possible recent "event" Plaintiff identifies is his receipt of a courtesy copy of the IMG/OSU contract. (*See id.* at 3.) But that contract was signed many years ago; it is not new.[12] It does not match Plaintiff's descriptions of it in his original filing — which are reproduced verbatim in the Proposed Third Complaint. Although the IMG/OSU contract would become Exhibit B if filed, it tends to refute Plaintiff's case theory, providing no support at all for his allegations of an anticompetitive agreement to "exploit" former football players. And the

---

[12] Plaintiff could have made a public records request for the IMG/OSU contract before filing the Complaint, and arguably had a duty to do so under Fed. R. Civ. Proc. 11(b).

specific and unique OSU contract, obviously, provides no support for the paragraph in Plaintiff's Motion (*id.* at 5) levelling allegations "on information and belief" against eighty-eight other schools nationwide.

Spielman's freshly stated multi-school theory, far from being a new "transaction" or "occurrence," is just an expanded version of Spielman's initial case theory.  It is proffered as a ***new belief***, without cited evidence or apparent investigation — not a new fact.

### 2.    The Motion Is an Attempt to Escalate Commercial Pressure in the Absence of Any Viably Pled Cause of Action

The federal policy requiring plausible pleading forbids the maneuver Plaintiff is now attempting.  Rather than stating facts to support the nature of his actual grievance, he seeks to expand its scope using conclusory boilerplate, to develop the threat of a massive discovery undertaking implicating eighty-nine schools nationwide.  In addition to violating the principles of personal jurisdiction and sovereign immunity, such a use of the litigation process would allow "conspiracy" pleading to "unlock the doors of discovery" in a way that the United States Supreme Court has explicitly barred.  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *see Twombly*, 550 U.S. at 557 (holding that conclusory complaints should be dismissed before discovery, because mere "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1354 (11th Cir. 2016) (holding that where claims were "pled in a wholly conclusory manner unsupported by any factual averments concerning the specific roles played by the vendors," dismissal was appropriate).

### 3.    The New Class Definition is Futile and Does Not Satisfy Local Rule 23.2

Spielman asks permission to expand the litigation across many dozens of campuses.  In addition to directly undermining the *Twombly/Iqbal* policy, this maneuver is an abuse of class-

action law.  Spielman's proposed new class allegations are hopelessly overbroad, and do not satisfy Local Rule 23.2.[13]

Although the Proposed Third Complaint would expand the class massively, there is no non-conclusory allegation (nor could there be) to show or even suggest the elements the Local Rule requires.  There is no fact to suggest that IMG's negotiated marketing-contract terms with each individual school, or any marketing activities involving former athletes on each individual campus, are "common" across the class, as required by Rule 23(a)(2) — much less that such commonality "predominates," as required by Rule 23(b)(3).  Moreover, if the Motion were granted, the numerous and material differences in the state laws of privacy and the state laws governing and creating immunity for government and state-university conduct, by themselves, would defeat class certification at the threshold.  *See Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (eliminating allegations of putative nationwide class at pleading stage where variable state laws made class certification plainly impossible).  The Complaint is futile, and the Motion should be denied, for this additional reason.[14]

There is nothing new in Plaintiff's Motion or in the Proposed Third Complaint.  The Motion should be denied on grounds of futility.  *See Galaria*, 2017 WL 4987663, at *9.

## V.      CONCLUSION

For the reasons given above, IMG respectfully requests that the Court deny the Motion, and renews its request for granting of its Motion to Dismiss under Rules 12(b)(7) and 12(b)(6).

---

[13] Under Local Rule 23.2(c), (d), and (e), any class complaint must "contain sufficient allegations" to show, among other things, "[t]he alleged questions of law and fact claimed to be common to the class" and "[t]he grounds upon which it is alleged that the claims or defenses of the representative parties are typical of the claims or defenses of the class," as well as "[a]llegations intended to support findings required by the respective subsections of Fed. R. Civ. P. 23(b)(1), (2), or (3)."

[14] If Plaintiff receives leave to file the Proposed Third Complaint, IMG reserves its right to file a motion to strike class allegations under Rule 23(d)(1)(D) and *Pilgrim*.  *See* 660 F.3d 943, 949 (6th Cir. 2011) (holding that "a defendant may freely move for resolution of the class-certification question" before discovery).

Respectfully submitted,

/s/ Joseph A. Castrodale
JOSEPH A. CASTRODALE (0018494)
GREGORY J. PHILLIPS (0077601)
JAMES E. VON DER HEYDT (0090920)
**BENESCH, FRIEDLANDER, COPLAN &**
**  ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: jcastrodale@beneschlaw.com
gphillips@beneschlaw.com
jvonderheydt@beneschlaw.com

NICHOLAS J. SECCO (*pro hac vice*)
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: (312) 212-4955
nsecco@beneschlaw.com

*Attorneys for Defendants IMG College, LLC;*
*IMG Worldwide, Inc.; WME Entertainment;*
*International Management Group; Ohio State*
*Sports Marketing*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2017, a copy of the foregoing Defendant IMG's Opposition to Motion for Leave to File an Amended Complaint was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

   /s/ *Joseph A. Castrodale*
Joseph A. Castrodale
*One of the Attorneys for Defendants IMG College, LLC; IMG Worldwide, INC.; WME Entertainment; International Management Group; Ohio State Sports Marketing*